THE SECURITY INSURANCE COMPANY vs. THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY.

Several insurance companies combined to defend against a claim for a loss by fire, agreeing that each should pay such proportion of the expense as the amount of its insurance bore to the whole amount of insurance, and appointing a committee to manage the defence with full power to incur all necessary expense. The plaintiff, one of the companies, was afterwards sued by a person employed by the committee, for his services in the matter; it did not plead in abatement the non-joinder of the other companies, but the fact that the suit was brought was known to the present defendant, one of the companies, which did not request that such a plea be filed; and judgment was recovered against the plaintiff for the whole amount of the claim, besides which it was subjected to considerable expense and cost in the suit. The present defendant had objected to the claim made in that suit as unreasonable in amount and the present plaintiff defended against it on that ground, but it was admitted in the present suit to have been reasonable. The plaintiff afterwards brought a suit for contribution against the present defendant, which was the only company within the jurisdiction of the court, and the policy of which was of the same amount with the plaintiff's. At this time several of the companies had become insolvent or were dissolved and were without assets. The plaintiff had collected a portion of the amount from some of the other companies. Held—

1. That by the agreement the signers subjected themselves to a joint liability to all persons rendering service to their agent, the committee.

2. That the provision that each company should contribute in proportion to the amount of its insurance, operated only as a rule of apportionment among themselves, and did not affect an outside creditor.

3. That although the plaintiff when sued might have pleaded in abate-

ment the non-joinder of the other companies, it was not bound to do so as against this defendant, without its request, it having knowledge of the suit.

4. That the companies that were insolvent were to be laid out of the case in determining the amount that the other companies were bound to contribute to the plaintiff.

5. That the defendant, being the only company within the jurisdiction of the court, might be sued alone for contribution, and, its policy being of the same amount with the plaintiff's, was liable in the suit for half the amount remaining unpaid.

6. That the defendant was also liable to pay an equal share of the expense and cost to which the plaintiff was subjected in the suit of the creditor, the defendant objecting to the creditor's claim as unreasonable in amount, and it being proper in the circumstances that the plaintiff should not pay it until it had been judicially investigated.

7. That it was not necessary that the defendant should be judicially concluded by that judgment, since, the claim being now admitted to be reasonable in amount, the defendant would have been holden if the plaintiff had paid it without a suit.

8. That the plaintiff and defendant were entitled to contribution from the other companies for what they had paid beyond their shares.

Suit for a contribution; brought to the Superior Court. The principal allegations of the declaration were as follows:—

1. Prior to the 24th of April, 1874, the defendant with the plaintiff and other insurance corporations, had severally issued policies of fire insurance to Messrs. Taylor, Randall & Co., of Boston, Massachusetts, upon property on Central Wharf in said Boston, the policies of the defendant and plaintiff being each for the sum of twenty-five hundred dollars, and, prior to said date, said insured property had been destroyed by fire, and, on said date, claims were being made by the insured on said policies against the defendant and plaintiff and said other insurance corporations.

2. Prior to said April 24, 1874, the plaintiff and defendant, together with the German Insurance Company, of Erie, Pennsylvania, which had a policy of insurance on said property of $5,000, and the Mississippi Valley Insurance Company, of Memphis, Tennessee, which had a policy of insurance on said property of $5,000, the Mechanics and Traders Insurance Company of New York City, the Kings' County Fire Insurance Company of New York, the Frank-

lin Insurance Company, of Indianapolis, Indiana, the Franklin Insurance Company, of Wheeling, West Virginia, the Lafayette Fire Insurance Company, of New York City, the Adriatic Fire Insurance Company, of New York City, the Oswego & Onondaga Insurance Company, of Baldwinsville, in the state of New York, the Ben-Franklin Insurance Company, of Alleghany, Pennsylvania, the Hibernia Mutual Fire Insurance Company, of Newark, New Jersey, the Globe Insurance Company, of Chicago, Illinois, and the Clay Insurance Company, of Louisville, Kentucky, all which said companies had severally policies on said insured property, each of $2,500, had determined that the claims made on said policies by the insured were fraudulent and invalid, and on said last mentioned date the plaintiff and defendant and said other insurance corporations mentioned in this article, entered into and signed the following written agreement with each other:

"*In re* TAYLOR, RANDALL & CO. *vs.* ST. PAUL FIRE & MARINE INS. CO. ET ALS. The undersigned insurance companies having policies outstanding, issued to Taylor, Randall & Co., upon property on Central Wharf, Boston, upon which claims have been made against said companies, do, in consideration of one dollar by each paid to the other, and divers other good and valuable considerations, mutually covenant and agree to and with each other as follows, that is to say, the said companies will unite in resisting the claim made upon said policies, and on each thereof, and in the defence of any and all suits and legal proceedings that have been or may be instituted against any of said companies upon any of said policies, and will, when and as required by the committee hereinafter mentioned, contribute to and pay the costs, fees and expenses of said suits and proceedings pro rata, that is to say, each company shall pay such proportion of said costs, fees and expenses as the amount insured by said company shall bear to the whole amount insured on said property by all the companies subscribing to this agreement; the management and conduct of said resistance to said claims and defence of said suits and proceedings shall

be and is fully entrusted to and devolved upon a committee to be composed of W. H. Brazier, of the city of New York, Charles W. Sproat, of the city of Boston, James R. Lott, of the city of New York, and L. S. Jordan, of the city of Boston; which committee shall have full power and authority to employ counsel and attorneys to appear for said companies and each thereof and defend said suits and legal proceedings, and to employ other persons for other services relative thereto, and to assess upon and demand and receive from such companies from time to time, as such committee shall deem proper, such sum or sums of money, for the compensation of such counsel and attorneys, and such other persons, and all other expenses of such defence of said suits, as said committee shall deem necessary and expedient; such assessment upon and payment by each of said companies, to be pro-rata as above mentioned. Each and every of said companies shall fully and faithfully adhere to this agreement, and shall refrain from any act or proceedings in reference to such claims or suit or the defence thereof, that can or may in anywise defeat, obstruct or interfere with the acts or proceedings of said committee relative thereto, and shall at all times furnish to said committee any and all papers, information and assistance in and about such management and conduct of such resistance and defence, as may be in the possession or power of said companies respectively and as may be desired by said committee. In witness whereof, the said insurance companies have subscribed this agreement, the 24th day of April, 1874."

3. At the time of the execution of said agreement suits were pending in Massachusetts against the Franklin Insurance Company of Indianapolis, and the Clay Insurance Company of Kentucky, and the defendant, and the caption of said agreement refers to such suits.

4. Mr. Edward T. Woodward, of said Boston, was duly employed, under said agreement, on behalf of the subscribers thereto, to assist in the defence of said suits as an expert on sundry matters therein involved and for other purposes, and in pursuance of such employment the said

Woodward rendered great and valuable services in the defence of said suits.

5. After long and exhaustive trials the plaintiffs in those suits were beaten on the merits of the controversy, and it was established as the result of said suits that the plaintiffs therein would not be able to enforce their claims against the subscribers to said agreement.

6. At the close of said suits said Woodward presented to the committee mentioned in said agreement a bill for his services, amounting to the sum of $5,000, which bill was approved by said committee and was reasonable, and was so adjudged by the United States Circuit Court as below stated.

7. In a reasonable time thereafter said committee levied an assessment upon the companies who were parties to said agreement, to pay the bill of said Woodward and other expenses incurred in said suits, but no company paid its assessment; each of said companies, including the defendant, alleging the bill to be unreasonable in amount.

8. In the year 1879 said Woodward sued this plaintiff in said Boston, to recover for his said services, and thereafter such proceedings were had as that in the United States Circuit Court for the First Circuit, held in Boston, in January, 1880, said Woodward recovered judgment against this plaintiff for the value of his services so rendered as aforesaid, to the amount of $5,000 and interest thereon, the whole of said judgment being about the sum of $5,444.08. Each of said defendants knew of the existence of said suit, and during its progress claimed that said bill was unreasonable in amount.

9. On an execution issued on said judgment, this plaintiff, on March 26, 1881, paid the whole amount thereof, which with interest was the sum last above stated, and this plaintiff was further subjected to the payment of the additional sum of $943, being for expenses and legal services incident to the trial of said cause.

10. Since the signing of said agreement, and before March 26th, 1881, the said German Insurance Company, the

said Hibernian Mutual Fire Insurance Company, and the said Globe Insurance Company, representing in all $10,000 of the insurance on said property, had utterly failed and there were in existence no assets of said companies or of either of them; and the said Oswego & Onondaga Insurance Company had been dissolved under the laws of the state of New York and could not be sued in law or equity in that state and is not within the jurisdiction of this court.

11. On or about May 23d, 1881, the plaintiff made demand upon all the remaining signers to said agreement, including the defendant, that they should contribute according to the amount of their several policies to reimburse the plaintiff what would be legally and equitably due on the facts aforesaid.

12. Some companies, other than the defendant and other than said insolvent companies, have responded to the demand of the plaintiff, so that there remains unpaid of the sum of $5,444.08, the principal sum of $2,252.52, and of the sum of $943, the principal sum of $400, but the defendant has refused to pay to the plaintiff any sum whatever.

13. All the other signers to said agreement, except the defendant, are without the jurisdiction of this court.

The plaintiff claims equitable relief, and that there be an accounting between the plaintiff and the defendant, and that of the sums paid by the plaintiff as aforesaid, and remaining unpaid, the defendant be decreed and ordered to pay the plaintiff one-half thereof, to wit: the sum of $1,750; and for such other relief as shall be equitable in the premises.

To this complaint the defendant filed the following demurrer:—

The defendant demurs to the plaintiff's complaint and the matters therein contained:

1. Because it appears from the complaint that the plaintiff was not legally or equitably bound to pay said Woodward any sum of money whatever, upon the account of or for the benefit of the defendant; and that it further appears from said complaint that if the plaintiff paid any money to

said Woodward or upon said judgment on account of or for the benefit of the defendant, it was paid by the plaintiff voluntarily, and without the request, knowledge or consent of the defendant.

2. That it appears from the complaint that the defendant was liable to pay said Woodward, either at law or in equity, the sum of about three hundred dollars and no more; and that if the plaintiff paid said Woodward said debt or said judgment, and had any claim either at law or in equity against the defendant and other parties mentioned in the complaint for contribution, it appears by the complaint that all except the defendant have repaid the same to the plaintiff.

3. That it appears from the complaint that the defendant's liability upon said contract, either at law or in equity, is an individual and separate liability for the defendant's *pro rata* part of the debt described in said complaint, and that the defendant is not liable to contribute for the insolvent companies' liability mentioned in said complaint, and that the defendant is not a surety and did not become liable for any of the other companies' liability mentioned in said complaint.

4. That it appears from said complaint that said contract was executed beyond the jurisdiction of this court with companies that were not then and never have been within the jurisdiction of this court, and that the facts alleged in paragraph thirteen of the plaintiff's complaint give the plaintiff no right to contribution against the defendant.

5. That upon the facts alleged in the complaint the defendant is not liable to pay any part of the costs of the plaintiff's defence against the suit of said Woodward.

6. That it appears from the complaint that the plaintiff was not liable to said Woodward upon said contract for more than its *pro rata* part, to wit, the sum of $300, and that the plaintiff without objection suffered judgment against itself for the defendant's liability to Woodward, and that the defendant was not a party to said action, and did not consent to it and is not liable to pay or contribute any part of said judgment.

The case was reserved upon the demurrer for the advice of this court.

*W. Stoddard*, in support of the demurrer.

1. There was no legal or equitable liability to Woodward on the part of the Security Insurance Company under the agreement for more than its *pro rata* part of the whole sum found due him. As it contested the claim solely upon the ground that the charges were excessive, and did not raise the point that it was not liable for the whole amount, the payment by it of any part of the $5,000, if owing and due from the defendant and the other companies, was a voluntary payment, and the plaintiff cannot recover from the defendant any part of the sum paid. Phillips on Insurance, § 2,000; *Lucas* v. *Jefferson Ins. Co.*, 6 Cowen, 635.

2. The contract entered into by the defendant, the plaintiff, and the other insurance companies, fully settles what amount of this sum of $5,000 each company shall pay. Applying the words of the contract to the $5,000 due Woodward, it reads: "And will, when and as required by the committee hereinafter mentioned, contribute to and pay said Woodward $5,000, *pro rata;* that is to say, each company shall pay such proportion (of said $5,000) as the amount insured by said company (the St. Paul Fire & Marine Insurance Co.) shall bear to the whole amount insured on said property by all the companies subscribing to this agreement." In other words, the St. Paul Fire & Marine Ins. Co. will pay to Woodward $\frac{2500}{42500}$ (or $\frac{1}{17}$) of $5,000, which amounts to $294.10.

3. Having entered into this contract specifying the amount that each company shall pay, and that they are not each liable for the whole amount, they are bound by it, and the plaintiff is not entitled to contribution from the defendant, for either the insolvent companies or those beyond the jurisdiction of the court. *North* v. *Brace*, 30 Conn., 60; *Dering* v. *Earl of Winchelsea*, 2 Bos. & Pul., 270; 1 Leading Cases in Equity, (H. & W. notes,) 96, and cases there cited; *Armitage* v. *Pulver*, 37 N. York, 494; Brandt on Suretyship & Guaranty, § 252.

4.   Before the plaintiff can claim contribution in this case, it must show that the defendant was either jointly or severally bound and holden for the same obligation that the plaintiff was.   Under this contract there is no such obligation.   The plaintiff was holden and bound to pay a certain distinct sum, (a definite part of the $5,000,) and no one else was either jointly or severally liable for the same sum; and so the defendant, and each of the other companies signing the agreement, assumed alone and individually a certain distinct sum, and no one company was liable, either jointly or severally, for any of the others.        .

5.   The fact that the other companies are without the jurisdiction of the court, does not entitle the plaintiff to recover from the defendant.   Those parties were never within the jurisdiction of the court.   The principle upon which contribution exists by one surety against a co-surety, where one of the sureties has become insolvent or has left the state, is, that it was the understanding that all parties should equally bear the burden, and each guarantees that the other shall perform his contract.   And where in such a case one co-surety moves from the state, so that he cannot be reached, it is a breach of the contract as it was understood between the sureties, and if a loss occurs, equity says that it shall be borne equally by the remaining parties. *Boardman* v. *Paige*, 11 N. Hamp., 431. . In this case there was no agreement, either expressed or implied, that any of the companies should ever be within the jurisdiction of the court, and consequently there was no breach of the contract which we guaranteed, and therefore we are not liable on that ground.

6.   We are not liable for the costs of the plaintiff in defending the Woodward suit.   We were not parties to that suit.   We did not authorize any defence, and the defence was not for our benefit.   *Boardman* v. *Paige*, 11 N. Hamp., 431; *John* v. *Jones*, 16 Ala., 454; Brandt on Suretyship & Guaranty, § 247.

7.   The most that under any circumstances can be recovered against us in this case is $294.10, a sum in con-

troversy which is below the jurisdiction of the Superior Court. When it appears from the declaration that the sum to be recovered must be below the jurisdiction of the court, the court will dismiss the complaint. *Grether* v. *Klock*, 39 Conn., 135; *Hunt* v. *Rockwell*, 41 id., 51.

*J. W. Alling,* contra..

1. The right of contribution applies to all cases where two or more persons are liable by contract in the same way to a third person, and such third person compels one to pay the entire obligation. 1 Story Eq. Jur., § 504; 1 Parsons on Cont. (6th ed.,) 31, and note *d;* Brandt on Suretyship, § 220.

2. The various insurance companies were of course co-contractors. Was Woodward's claim against them all? He could enforce his whole claim against all jointly, or any one of them which should not plead in abatement the non-joinder of the others. He was not bound to sue each for a fractional part of his claim. The whole nature of the case and the structure of the contract show that when attorneys or other persons were employed, it was by the committee as agents of all the companies and for the benefit of all. The provision that each company should pay in proportion to the amount of its insurance, was simply a rule of apportionment among themselves, and could not affect a third party having a claim for services. *Kincaid* v. *Hocker*, 7 J. J. Marsh., 333. It was like the case of a partnership where the apportionment between the partners may be unequal, but where all are liable for a debt owed by it.

3. The plaintiff had a right to look to the solvent companies for the entire contribution. The party paying an entire debt which others are bound to share with him, has a right, in seeking contribution from the rest, to look to the solvent co-contractors, without reference to those who have become insolvent. *Hyde* v. *Tracy*, 2 Day, 491; *Cary* v. *Holmes*, 16 Gray, 127; *Van Petten* v. *Richardson*, 68 Misso., 379. The case of *North* v. *Brace*, 30 Conn., 60, cited on the other side, rests upon an essentially different state of

facts. But even in that case the court say (p 72:) "As a general doctrine of equity it is true that where there is an entire debt or duty owed equally by several, the solvent debtors must share equally in any burden thrown upon them by the insolvency of a part of their number." It is a fair and indeed an irresistible inference, that as the companies united in defence of the test suit on the supposition that all were able to pay, now that some are unable to pay their share should be distributed among the solvent parties according to their interests.

4. The companies that are without the jurisdiction of the court are to be regarded in the same way as the insolvent companies and are to be excluded in making a basis for contribution. *Cary* v. *Holmes*, 16 Gray, 127 ; *Whitman* v. *Porter*, 107 Mass., 522 ; *McKenna* v. *George*, 2 Rich. Eq., 15. Both the plaintiff and the defendant must seek in other jurisdictions the application of the law of equitable apportionment, until all the solvent companies settle equally according to their respective interests.

5. Whether the costs and expenses growing out of the plaintiff's defence against Woodward's suit can become a subject for contribution, must depend upon whether it was reasonable in the circumstances that that defence should have been made. It is admitted, that the defendant claimed that Woodward's bill was unreasonable in amount, both before his suit and during its progress, and that the defendant knew of that suit. It would therefore have been very imprudent for the plaintiff to pay that bill before it had been established by a competent tribunal, and the reasonable expense of getting the claim adjusted ought to be one of the items of the account in contribution. 1 Parsons on Cont., (6th ed.,) 33, and notes ; *Marsh* v. *Harrington*, 18 Verm., 150 ; *Fletcher* v. *Jackson*, 23 id., 593. "If the complainant, knowing that the demands were just, and that his co-sureties and himself were bound to pay them, had voluntarily incurred expenses in unnecessarily defending the suits, he would have been without remedy for costs; but from their nature it cannot be supposed that he was fully

aware of the *bonâ fides and amounts of these demands, and he owed it to himself and to his co-sureties to see that they were established according to the principles of law ;* and that he could not do without incurring the expense of employing counsel." *McKenna* v. *George,* 2 Rich. Eq., 18.

PARDEE, J. (After stating the facts.) By the terms of the agreement the signers jointly subjected themselves to liability to all persons rendering service at the request of their agent, the committee. And this upon the equitable principle that when several persons desire to bring about the same result, one which will be of pecuniary advantage to each, and agree to unite and make common cause each with all others in the undertaking, and join in the appointment of the same agent for the accomplishment of their purpose, as between themselves each is bound to contribute his proportion to the consequent expense; that proportion to be determined by the number uniting, or by a rule established by themselves, or by such equities as may arise from the circumstances attending the transaction. And, if one of them pays, either upon the judgment of a court or voluntarily, a claim justly due from all, each of the others is under obligation so to contribute to his repayment as that the final result shall be that each solvent person has paid his proportion; the person voluntarily paying the whole assuming the risk of the invalidity of the claim, but not the risk of the insolvency of a joint contractor. The provision in the contract as to payment *pro rata,* is to be read as if it expressed that the division is to be among solvent signers only; and it is applicable to them only; it has no effect upon those serving them; it determines that the expense is not to be divided *per capita* but in proportion to the amount insured by each, to the benefit to be derived by each from a successful resistance to the demands of the insured. Therefore it was in the power of Woodward to make all of them defendants in one suit for his entire claim; he was under no obligation to enforce it in fractions against each separately; nor did he take the risk of loss resulting from the insolvency

of any. And choosing to sue this plaintiff alone, in the absence of a plea in abatement for non-joinder of the others he might legally have judgment for the whole. And the plaintiff was under no obligation to the others to plead in abatement in the absence of any request, they having knowledge of the suit and an opportunity to join in the effort to defeat it.

Whether the plaintiff gave such notice of the suit to the defendant that the judgment concludes the latter as to the amount due, is of no consequence, since the petition alleges, and the demurrer of course admits, that the bill of Woodward "was approved by the committee and was reasonable." The plaintiff could therefore have safely paid it without waiting to be sued.

This being so, the question arises how the plaintiff can justly call on the defendant to contribute to the expense of defending against that suit. The expense of that defence was about $900. Why should the plaintiff have incurred this expense in resisting a reasonable claim, and after making an ineffectual resistance why should the plaintiff look to the defendant for its share of that expense? This claim is a plausible one, but the peculiar facts of the case show the groundlessness of it. The plaintiff presumably could not have known that the claim was a reasonable one until it had been investigated in court and so found. But aside from this, it is alleged and by the demurrer admitted, that "the defendant [in this suit] claimed that the bill of Woodward was unreasonable in amount." This being so, it was both reasonable in itself, and due to the defendant, that the bill should not be paid without a judicial investigation, and of course the expense of that investigation should be shared by all the parties interested, especially in view of the original agreement of the several insurance companies to make common cause in the whole matter.

It is of course to be understood that the judgment obtained against the plaintiff by Woodward does not become judicially conclusive upon the present defendant by reason of the propriety of the making of the defence by

the plaintiff, but the facts have their operation merely in making it reasonable that the expense of that defence should be shared by the parties interested.

Each signer was responsible to Woodward for his entire claim; each was alike exposed to a judgment in his favor for the whole; therefore the duty of payment was upon all alike. It fell to the lot of the plaintiff to be made sole defendant in a suit by Woodward for the whole, and to be compelled to pay it; it is not inequitable for it to put upon any one of its co-signers one half of the burden which it has been compelled to assume. And if it is driven to the necessity of asking a court of equity to compel contribution and can find but one solvent co-signer within the jurisdiction of that court, it is entitled to a decree for contribution to the extent of one half of the amount paid by it. The plaintiff and defendant can each thereafter enforce contribution against co-signers in other jurisdictions, or submit to an equal loss as they may prefer. So far as this jurisdiction is concerned, a burden which two are to bear, will press with equal weight on both.

The Superior Court is advised that the complaint is sufficient.

In this opinion the other judges concurred.