[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Robert T. DeSalle, Sr., (hereinafter referred to as the "plaintiff") instituted the present action against the A-1 Sign Company, Inc. (hereinafter referred to as "A-1 Sign Co.") Gustaf T. Appelberg, (hereinafter referred to as the "individual defendant") and two escrow agents. The case was submitted to the court on the First, Second and Seventh counts of the amended complaint dated January 28, 1992.
The first count is directed against the A-1 Sign Co. and the individual defendant asserting a breach of agreement between the parties made on May 21, 1990; the second count is directed against the A-1 Sign Co. for the failure to pay a promissory note; the seventh count is directed against two attorneys, as escrow agents, for failure to turn over shares of stock pursuant to an escrow agreement dated May 21, 1990. The defendant A-1 Sign Co. and the individual defendant have pleaded two special defenses, the first asserting misrepresentation inducing the defendants to enter the agreement and the second special defense asserting that the plaintiff breached the agreement between the parties thereby causing a failure of consideration. The defendants have also filed a counterclaim asserting that the plaintiff breached a covenant not to compete and an employment agreement between the parties.
In 1989 the plaintiff was the owner of a sign manufacturing business located in Bridgeport which he operated for many years. The plaintiff was interested in selling the business and engaged the services of a broker to assist in the sale. In October of 1989 the broker was contacted by the individual defendant in connection with possible purchase of the plaintiff's business. From October of 1989 to May of 1990, the individual defendant together with his son and others considered and evaluated the purchase of the plaintiff's business for sum of $450,000. The defendant was provided with the 1989 Schedule C to the plaintiff's tax return which indicated a gross income of $195,000. CT Page 8729 The individual defendant did not believe that this type of sales level warranted a purchase price of $450,000. The individual defendant was then provided with numerous boxes of documentation to reconstruct the plaintiff's business for the year 1989 and subsequently for the first four months of 1990. In reviewing the material provided by the plaintiff individual defendant was satisfied that the sign business could produce gross sales in the area of $600,000 and the parties subsequently entered into an asset purchase agreement at a closing held on May 21, 1990.
The purchase price for the business, including a covenant not to compete referred to in paragraph 19 of the agreement, was in the amount of $450,000 payable as follows: a) $7,000 at the signing of the agreement, (b) $63,000.00 to bed paid at the time of the closing, c) "the sum of $350,000.00 on the date of closing by way of a purchase money loan from Seller to Buyer. Said loan shall be evidenced by a promissory note in the form and content as set forth in Schedule `C' annexed hereto and shall be secured by a pledge of stock in E-L, Technologies, Inc. owned by Gustaf T. Appelberg . . ." and d) $30,000.00, without interest, payable in four quarterly installments commencing on September 1, 1990,
Paragraph 17 of the agreement provided for a $45,000 reduction in the purchase price in the event that gross sales averaged less than $600,000.00 per annum during the 24 month period following September 1, 1990.
Paragraph 19 of that agreement also contained a covenant not to compete by the plaintiff. Paragraph 15 of the agreement contained an allocation of the purchase price to which the covenant not to compete was allocated for the sum of $300,000. The agreement was made between Appelberg, Inc., a Connecticut corporation wholly owned by the individual defendant and the individual defendant and contains the reference "(hereinafter jointly referred to as "Buyer")." The promissory note referred to in the agreement was signed by the individual defendant in his capacity as president of the corporate defendant. There is no promissory note signed by the individual defendant in his individual capacity. At the time of the execution of the documents the plaintiff also signed an employment agreement and an indemnification agreement and the attorneys for the respective parties also executed a stock pledge agreement. The assets of the A-1 Sign Co. were transferred to Appelberg, Inc. which thereafter CT Page 8730 changed its name to the A-1 Sign Co.
Shortly after the purchase of the assets, problems arose between the respective parties. It was agreed that the plaintiff did not continue to work for the defendants after October of 1990 and the parties in dispute as to just when in October that event occurred and the circumstances giving rise to the event. The plaintiff claims that be was told that the company could not afford to pay him and be might as well see his lawyer; the defendants claim that the plaintiff simply failed to return to work thereby constituting a breach of the employment agreement and began competing with the defendant thereby breaching the covenant not to compete. It is agreed by the parties that none of the payments called for in the asset purchase agreement were made by the defendants except for the first interest payment provided for in the promissory note. The first quarterly installment of $7500 due on September 1 was not made and the plaintiff claims that that is a breach of the agreement. The defendants however claim that in late September 1990 the parties met to discuss their differences and. at that meeting. The plaintiff agreed through his attorney, to defer that payment until December 1990. The court finds that the parties did agree in September of 1990 to defer the September 1 payment until December of 1990. While § 12.11 of the agreement provides that it shall not be altered or amended except by instrument in writing, there was no discussion at the September meeting of the necessity for a writing and the defendants were entitled to rely upon a reasonable understanding that necessity for a writing had been waived. Blakeslee v. Water Commissioners, 121 Conn. 163, 182-183
(1936).
In the first special defense the defendants claim that the plaintiff misrepresented the prior annual sales, gross profits and general viability of the business. The evidence clearly establishes that the defendants, with others assisting them, expended considerable effort and time reviewing the file folders of the plaintiff in an attempt to reconstruct the nature of the business for the year 1989 and for the first four months of 1990. There has been no evidence that the file folders delivered to the defendants by the plaintiffs were incorrect or were misrepresented in anyway. Accordingly, the court finds that the defendants relied upon their own review of the file folders of the plaintiff and cannot factually assert that they relied upon a representations or documentation provided to them by the plaintiff other than the file folders upon which they based the CT Page 8731 determination to enter the asset purchase agreement for a price of $450,000.
The defendants claim that the first count of the amended complaint, which is the the only count directed to the individual defendant, do not contain allegations which are sufficient to place the defendants on notice that the plaintiff was claiming that the individual defendant was liable for the failure to pay the purchase price. The allegations of the first count assert, in paragraph 5, that "[I]n consideration of the defendants' promise to pay the sum of $450,000 to the plaintiff DeSalle, Sr., "the plaintiff agreed to sell the business to the defendants as set forth in asset purchase agreement". Paragraph 6 of that complaint sets forth the payments due as the purchase price including the quarterly installments of $7500 each and the $350,000 as set forth in the asset purchase agreement. Paragraphs 7, 8 and 9 then respectively allege the following:
 7."Defendants failed to make any quarterly payments due pursuant to the Agreement despite the plaintiffs demand.
 8. Defendants failed to make interest payments due pursuant to the Note terms, despite said plaintiff's demand.
 9. Defendants failure to make the payments required was a breach of the agreement."
The defendants claim that the allegations of paragraphs 7 and 8 refer only to quarterly payments and interest payments and are not sufficient to encompass the purchase price set forth in the agreement. It is fundamental in our law that a right of a plaintiff to recover is limited to the allegations of (its) complaint . . However, the modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically rather than narrowly and technically . . . As long as the pleadings sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations and internal quotations omitted)NormandJoseph Enterprises. Inc. v. Connecticut National Bank,230 Conn. 486, 496 (1994).
Paragraph 6 of the amended complaint sets up the various payments required including the quarterly installments and the provisions for payment of the $350,000. Paragraph 9 asserts that CT Page 8732 the failure to make the payments was a breach of the agreement. It is true that paragraphs 7 and 8 refer only to quarterly payments and interest payments. If the Court were to construe that pleading technically or and narrowly the Court could arrive at the conclusion asserted by the defendants. However, construing the pleading broadly and realistically, it is apparent that the plaintiff is asserting a claim that the individual defendant is liable for the purchase price and not simply making a claim that he is liable only for interest and quarterly payments but not principle payments. Such a construction does not come as a surprise to or prejudice the defendant. The procedural history of the case including the proceedings before the attorney trial referee, who previously tried this case, and subsequent proceedings clearly indicate that the plaintiff is attempting to claim that the individual defendant is liable for the purchase price.
To construe the first count as alleging only liability for quarterly payments and interest payments, thereby foregoing a claim for the $320,000 sum contained in the agreement, would itself be unrealistic in view of the procedural history of the case. The court therefore finds that the allegations of the first count are sufficient to allege personal liability for the purchase price upon the individual defendant.
The parties are also in dispute as to whether individual defendant and the corporate defendant are both liable for the payment of the purchase price or whether, as claimed by the defendants, only the corporate defendant is liable for the payment of the purchase price. The particular contractual provision involved is contained in the paragraph 2 of the agreement which provides that the price of $450,000 shall be paid as follows:
 "(C) The sum of $350,000.00 on the date of closing by way of a purchase money loan from Seller to Buyer. Said loan shall be evidenced by a promissory note in the form and content as set forth in Schedule "C" and annexed hereto and shall be secured by a pledge of stock in E-Light Technologies, Inc. owned by Gustaf T. Appelberg, as more particularly described in paragraph 18 hereof."
The note referred to is in the amount of $350,000 and provides the payment of attorney's fees incurred in the collection of the note and provides for interest monthly with the CT Page 8733 principle balance of the note, together with accrued interest, to be paid in 60th month following the commencement of payment. The note also refers to the stock pledge agreement and is signed by Gustaf T. Appelberg in his capacity as president and contains no signature nor indication of any personal liability on the individual defendant other than the stock pledge agreement.
"In considering the expressed intent of a contract evidenced, as was this, by multiple writings, all of the writings should be considered and an endeavor made to ascertain the expressed intent of the contract as a whole . . . "Schuhert v. Ivy, 158 Conn. 583,588 (1969); see also 2 Williston, Contracts (3rd Ed., Jaeger) § 320 pp. 650-651; Restatement Contracts 2nd Ed. § 289. "Under the general common law rule, where two or more promisors enter into an agreement with a third party for one performance, there is a presumption that the promisors are contracting jointly in absence of words of severance in the contract." Schubert v.Ivy, supra. The Restatement of Contracts, 2nd Ed. § 289 provides in part as follows:
 "(1) Where two or more parties to a contract promise the same performance to the promisee each is bound for the whole performance thereof whether his duty is joint, several, or joint and several. 2) Where two or more parties to a contract promise the same performance to the same promisee they incur only a joint duty unless an intention is manifested to create several duties or joint and several duties."
In the comment to § 289, it is noted the modern tendency is to treat the question as one of interpretation and therefore give weight to manifestation of contrary intention in whatever form and that § 2 thereof reflects that tendency.
The court therefore must read the multiple documents as a whole in order to determine the intent of the parties. Initially is it noted that the sum of $350,000 due at the closing was paid by a purchase money loan from "Seller to Buyer". The loan is "evidenced" by a promissory note, signed only by the corporate defendant, and is secured by pledge of stock owned by the individual defendant. Thus the $350,000 due at the closing was paid in the form of a purchase money loan evidenced by a note signed only on behalf of the corporation.
A review of the various documents comprising the entire transactions indicates that the word "Buyer" is used loosely CT Page 8734 throughout the documents. It is apparent that all tangible assets were transferred to Appelberg, Inc. and not to the individual defendant. The indemnification agreement lists only Appelberg, Inc. as the "Buyer" and provides indemnity only to corporate defendant and states that the the corporate defendant is the "Buyer" (i.e. Appelberg, Inc.) and "has purchased the assets".
The stock pledge agreement by which individual defendant pledged his stock in E-Light Technologies, Inc. states that Appelberg, Inc. has entered into a purchase money loan in the amount of $350,000.00. in connection with the acquisition by Appelberg, Inc. of the assets. The agreement provides that the "Buyer" shall receive title to the assets and exhibit 8 indicates that the assets were transferred only to Appelberg, Inc., Paragraph 14 of the asset purchase agreement provides that the Buyer agrees to enter employment agreements and that the only employment agreements entered into were on behalf of the corporation and not on behalf of the individual defendant. (Now A-1 Sign Co.)
After reviewing the documents as a whole the court concludes that the intention of the parties as expressed in the documents envision only that Appelberg, Inc. would be responsible for the payments called for under paragraph 2(C) for $350,000 and that those payments were secured by the stock of the individual defendant in E-Light Technologies, Inc. which, at the time of the closing, the parties valued at $450,000.
The situation involving the obligation to pay the $30,000 without interest in equal quarterly installments stands on a different footing. There is no manifestation or indications in the agreement that the corporation, Appelberg, Inc. would solely be responsible for those payments. The agreement was signed individually by Gustaf Appelberg and accordingly those payments were due from him.
One of the essential issues in dispute between the parties is the circumstances under which the plaintiff ceased employment with the defendant. The defendant claims that after the meeting in September 1990 in which there was an agreement to postpone the quarterly payment until December, the plaintiff and a representative of the defendant met at a diner where certain sums of money owed to the plaintiff were paid to him. The defendant claims that after that diner meeting, the plaintiff never returned to work. The defendant further claims that the CT Page 8735 plaintiff's continued employment with the defendant was critical to their survival and failure to return to work constituted a breach of employment agreement. The defendants further claims that the plaintiff then began to compete with the defendant thereby violating the non compete provisions of the agreement. On the other hand the plaintiff claims that in the latter part of October was told that he was no longer going to be paid and that he might as well go see his lawyer thereby terminating from his employment. There are certain facts in which indicate that the plaintiff continued to work for the defendant after the September meeting and the diner meeting. There are order forms and log entries dated in mid-October 1990 for sales made by the plaintiff on behalf of the defendant as well as testimony of the defendant that at the time the plaintiff made a trip to Pennsylvania during the second week of October 1990 he was employed by the defendant. In addition the plaintiff made a complaint to the Wage and Enforcement Division wherever he certified that he was discharged from employment in late October 1990. Accordingly, the court finds that the defendant terminated the plaintiff's employment in the latter part of October 1990 and therefore the failure of the plaintiff to continue working was not a breach of the employment agreement.
The defendant also claims that the plaintiff began competing with the defendant after his employment was terminated. However the court does not find the evidence sufficient to demonstrate that the plaintiff violated the non competition provisions of the agreement until after his employment u as terminated and at a time when interest payments were not being made pursuant to the note and quarterly installments called for in the agreement had not been paid.
The Court therefore finds that the plaintiff shall recover a judgment of the defendant, A-1 Sign Company as follows: $350,000 due on the promissory note together with interest 10% per annum from November 1, 1990 to the date hereof in the amount of $270,294.73 for a total due with respect to the note in interest payments in the amount of $622,294.73. In addition the defendant corporation is liable for the non payment of the $30,000 called for in the agreement together with interest thereon a rate of 10% from the November 1, 1990 to the date hereof in the amount $23,340.41 due under the quarterly payment provisions in the amount of $53,340.41.
There are also provisions contained in the note for the CT Page 8736 payment of attorney fees incurred in its collection. Various attorneys on behalf of the plaintiff have submitted affidavits concerning attorney fees expended with respect to the case. However, there are issues in the case which do not relate to the collection of the note such as the personal liability of the individual defendant and the defense of the counterclaim. Therefore the court awards to attorneys to the respective attorneys pursuant to the attempt to collect note as follows; Attorney Keifer, $36,339.31, Attorney Walman $13,875.00, Attorney Rueben, $7,675.00 for a total attorney fees figure of $57,889.31. Thus there is a total due from the defendant corporation to the plaintiff the sum of $786,864.86 with respect to the note, the quarterly payments and the attorney's fees. The court has also reviewed the file and within 18 months of the filing of the complaint the plaintiff filed an offer of judgment directed to the defendant corporation in the amount of $420,000 and was not accepted by the defendant corporation. Accordingly the plaintiff is entitled to interest, pursuant General Statutes § 52-192a and additional interest computed at the rate of 12% per annum. Accordingly there is additional interest due on the amounts owed and the amount of $762,374.89 making a total judgment in favor of the plaintiff as against the defendant A-1 Sign Co. in the amount of $1,549,239.75.
As previously indicated the individual defendant Gustaf T. Appelberg is responsible for the payment of $30,000 sum of money to be paid in quarterly installments and therefore judgment may enter against him in favor of the plaintiff in the amount of $53,340.41.
The escrow agents Martin J. O'neill and David L. Quatrella are hereby directed to deliver the stock certificates of the E-Light Technologies, Inc. to the plaintiff in accordance with the escrow agreement.
RUSH, JUDGE