LISMAN v. MICHIGAN PENINSULAR CAR CO.

(Supreme Court, Appellate Division, First Department.    April 12, 1900.)

CORPORATE BONDS—MORTGAGES—PAYMENT OF PRINCIPAL—LIABILITY FOR SUBSEQUENT INTEREST.

A mortgage given to secure the payment of bonds declared that, on "any sale" of the property covered by the mortgage, the principal of the bonds should become due; that a part of the mortgaged premises might be sold on written consent of a majority of the bondholders; and that all the property might be sold on written consent of all the bondholders, provided all property sold should be replaced. *Held*, that the words "any sale" referred to a sale under foreclosure, and, as any other construction would impair the bondholder's security, the corporation could not, on a voluntary sale of all its property, pay to a bondholder the principal of his bonds against his objection, and the corporation was liable for the interest subsequently accruing on the bonds according to the terms thereof.

Appeal from trial term, New York county.

Action by Fred J. Lisman against the Michigan Peninsular Car Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Arthur H. Van Brunt, for appellant.
Louis Marshall, for respondent.

McLAUGHLIN, J. This action was brought to recover upon 58 coupons maturing September 1, 1899, and which, when issued, were attached to certain bonds of the defendant. Payment of the bonds and coupons was secured by a mortgage upon certain franchises and property of the defendant, executed by it to the New York Guarantee & Indemnity Company, as trustee. The plaintiff had a judgment for the full amount claimed in the complaint, from which the defendant has appealed.

At the trial there was little or no dispute as to the facts. It there appeared that the plaintiff was the owner of the coupons in question, and that they represented the interest maturing September 1, 1899, upon certain bonds of the defendant then outstanding; that on the 1st of March, 1899, the defendant sold all of the property and franchises covered by the mortgage to the American Car & Foundry Company, and, on the 27th of April following, its board of directors, by notice duly given, called for the payment and cancellation of all of the outstanding bonds, and for that purpose deposited with the trustee named in the mortgage 105 per cent. of the principal, and interest accruing to June 1, 1899, of the bonds; that notice of such deposit was also given; and that the holders of $1,919,000 of the total of $2,000,000 of the bonds (but not including the holders of the bonds from which the coupons in suit were detached) had surrendered their bonds in pursuance of the call, and the same had been paid. The claim was there made—and it is the same one insisted upon in this court—that the plaintiff was not entitled to recover, because, under the terms and conditions of the mortgage, the principal of all the bonds secured thereby became due on the 1st of March, 1899, when the sale was made to the American Car & Foundry Company. The sole question presented, therefore, for our determination, is whether or not the defendant, under the mortgage referred to, had the right, against the objection of a bondholder, to pay the principal of the bonds held by him, notwithstanding the fact that by the terms thereof such principal did not mature until September 1, 1942. The defendant insists that it had this right, and its claim in this respect is based upon the ninth clause of the mortgage, which reads as follows:

"Ninth. If default be made in the payment of any interest on any of the bonds secured by this mortgage, and continue for thirty days after written demand of payment, the principal of all said bonds then outstanding, with all interest accrued and unpaid thereon, shall become due at the election and upon the declaration of the holders of the majority of said bonds, made as hereinafter provided, and filed with the trustee; and the holders of the majority of said bonds may at any time thereafter, until a sale of the property and franchises secured by this mortgage, and upon payment of the expenses incurred by said trustee to such time, in like manner reverse any such declaration, or, such default continuing or again occurring, may again declare such principal to be due, and said principal shall cease to be due or shall become due accordingly. But, upon any sale of the property and franchises secured by this mortgage, the principal of all the bonds secured hereby, and then out-

standing, shall become due, if not already due by the terms of the bonds, or by publication as herein provided."

Stress is laid upon the last sentence of the clause quoted, and particularly upon the words "upon any sale of the property." The sale referred to in this clause manifestly refers, not to a voluntary sale, but to one made after default, and in proceedings taken to foreclose the mortgage,—a sale under the mortgage, and not a sale subject to it. This is clear when the ninth clause is read in connection with the other provisions of the mortgage, and especially with the second and fifth clauses. The second clause provides, among other things, that the defendant—

"Shall pay the principal of all the bonds duly issued under this mortgage, when the principal shall become due by the terms of the bonds, or by declaration as hereinafter provided, upon the surrender of the bonds."

And the fifth clause provides that:

"The car company shall have the right, with the written consent of the holders of the majority of the bonds secured hereby, and then outstanding, to sell or otherwise dispose of, free from any lien created by this mortgage, any real estate or other property covered by this mortgage, upon certification in writing by the president of the car company, duly authenticated by its board of directors, that such real estate or other property is unnecessary for the proper conduct of the company's business, and shall, with the written consent of the holders of all the bonds secured hereby, then outstanding, have the right to sell or otherwise dispose of, free from any lien created by this mortgage, all of the property, then covered by this mortgage, except the franchises of the car company, and to abandon the operation of its works on said mortgaged property upon substitution of other property therefor, of equal value, and the operation of other works on such other property. The trustees shall, upon the written request of the car company, upon due proof of the consent hereinafter mentioned, join in the conveyance and transfer of any real estate, or other property sold or otherwise disposed of, with the consent of the bondholders, as aforesaid. All proceeds of sale of real estate or other property sold or disposed of as aforesaid shall forthwith be applied by the car company to the replacement of the property so sold, or otherwise, for the benefit of the mortgaged property. Any property acquired with the proceeds of any sale of property covered by this mortgage, or substituted therefor, shall be subject to the lien and provisions of this mortgage, and, upon the written request of the trustee, shall be conveyed by the car company to the trustee, to be held by the trustee upon the trust hereby created."

By the clause of the mortgage last quoted, it will be observed that the right or interest of the bondholders in the proceeds derived from a sale of the whole or any part of the mortgaged property is carefully protected. A part of the mortgaged property is permitted to be sold, so long as there is no default by the mortgagor in the payment of interest,—upon the express condition, however, that the proceeds derived from the sale shall, for the benefit of the bondholders, forthwith be applied by the mortgagor to the replacement of the property so sold; and all of the mortgaged property can be sold by the mortgagor only upon the written consent of all of the bondholders, and upon the further condition that other property of equal value shall be substituted for the property so disposed of. In other words, nothing is to be done by the mortgagor with reference to selling or disposing of the mortgaged property which shall, prior to the maturity of the bonds, impair in any way the security of the same. When all of the provisions of the mortgage are thus read and construed together,

it is clear that it was never intended to give to the mortgagor the right, by its own act, to pay the principal of the bonds in advance of the time specified in them when the same would mature. Any other construction would not only be unreasonable and unfair to the bond-holders, but contrary to express provisions of the mortgage. If there be any doubt (which we do not think there is) as to what sale was referred to by the use of the words "any sale," in the ninth clause, then that construction must be adopted which is most favorable to the bondholders, and one which will not impair their security in any way. 1 Jones, Mortg. par. 101. The defendant obligated itself to pay the principal secured by the bonds on the 1st day of September, 1942; and, under the mortgage securing the payment, it has no right, against the objection of a single bondholder, to pay in advance of that time. The bondholders have a right to insist that defendant shall carry out its contract; that it shall pay its bonds when it agreed to, and not before; and that in the meantime the interest shall be paid at the times stipulated. The recent case of Missouri, K. & T. Ry. Co. v. Union Trust Co., 156 N. Y. 592, 51 N. E. 309, is in point. Judge Vann, delivering the opinion of the court in that case, said:

"The outstanding bondholders have a right to receive their debt only as provided by the contract. That right is as sacred as to receive it at all. The obligation of the debtor is to pay the principal when it becomes due, and he has no right to compel the creditor to accept payment until it becomes due."

It follows that the judgment appealed from is right, and must be affirmed, with costs. All concur.