NATHAN WEIL *v.* EDWARD BERESTH ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued May 5—decided June 6, 1966

*Arnold E. Buchman,* for the appellants (defendants).

*George Levine,* with whom, on the brief, was *Melvin S. Katz,* for the appellee (plaintiff).

KING, C. J.   On August 27, 1954, the plaintiff, the defendants Edward Beresth and Gershon Weil, all three of Connecticut, and Raymond S. Harrison of Florida, who was not made a party defendant, comprised all of the directors of Self Service Sales Corporation, a Connecticut corporation, hereinafter called Sales, which was not made a party defendant, and were the holders of a majority of its stock. On that day, the foregoing stockholders, hereinafter sometimes referred to as signatories, and Sales entered into a written stockholders' agreement, the portions of which material to this controversy constitute a voting agreement and are set out in the footnote.[1]   Briefly, each stockholder agreed, so long as he remained a stockholder of Sales, to vote for

---

[1] "1.   Each of the stockholders who is a party to this agreement agrees, so long as he is a stockholder of Sales, to vote his stock for the election of the other stockholders who are parties to this agreement as Directors of Sales at each and every annual meeting of the stockholders of Sales, or at any special meeting of the stockholders of Sales which may be held for the purpose of electing a Director or Directors.

"2.   The stockholders further agree to cause to be called within ninety (90) days after the date of this agreement, a special meeting of the stockholders of Sales for the following purposes:   (a) To amend the by-laws by decreasing the number of Directors from five to four;   (b) To adopt a by-law providing that not less than three (3) members of the Board of Directors shall be necessary

the election, as directors, of the other stockholders who were parties to the agreement, at every meeting held for the purpose of electing directors. Each further agreed to vote to amend the bylaws to reduce the number of directors from five to four and to provide that three directors should constitute a quorum, and thereafter not to vote to amend "the by-laws so adopted" without the consent of all the other individual parties to the agreement.

These bylaws were duly adopted in accordance with the agreement, and for over ten years thereafter the terms of the agreement were carried out until, at a stockholders' meeting on April 19, 1965, the defendants Edward Beresth and Gershon Weil and, by proxy, Raymond S. Harrison, over the objections of the plaintiff and without his consent, voted to repeal the existing bylaws and to adopt new bylaws. Among the provisions of the new bylaws to which the plaintiff objected was one which increased the number of directors from four to five and another which permitted amendment of the bylaws by a vote of a majority of the board of directors. Thereafter, five directors were purportedly elected, including the four signatories to

to constitute a quorum at any meeting of the Board but that a lesser number may adjourn from time to time until a quorum is present;

"3. At said stockholders' meeting, the stockholders agree to vote their stock in favor of the adoption of amendments to the by-laws, as specified in Paragraph 2 of this agreement, and they further agree that they will not thereafter vote their stock either in person or by proxy to amend the by-laws so adopted without the consent of all of the stockholders who are parties to this agreement."

On June 3, 1957, the parties, by unanimous consent, executed an amendment to two paragraphs of the original agreement not directly involved in this controversy.

the voting agreement and, as a fifth director, Neil Beresth, the son of the defendant Edward Beresth.

The plaintiff thereupon instituted this suit, seeking, through equitable relief, specific enforcement of the agreement, including the rescission of the new bylaws and the restoration of the old ones.

It should be noted that the agreement was entered into by the signatories as stockholders, and not as directors, and that it does not purport to limit their actions as directors in the management of the corporation. See *Bator* v. *United Sausage Co.,* 138 Conn. 18, 22, 81 A.2d 442; *Clark* v. *Dodge,* 269 N.Y. 410, 415, 199 N.E. 641; *Manson* v. *Curtis,* 223 N.Y. 313, 320, 119 N.E. 559; note, 45 A.L.R.2d 799, 811 § 5 (a). Furthermore, the defendant stockholders, who are questioning the validity of this agreement, were parties to it. See 5 Fletcher, Corporations (Perm. Ed. 1952 Rev.) § 2066, p. 289.

At the time the agreement was entered into, § 5161 of the 1949 Revision of the General Statutes provided, inter alia, that no proxy should be valid more than eleven months after its execution unless a longer term was provided therein, and § 1935c of the 1953 Cumulative Supplement to the General Statutes permitted voting trusts with a duration of not more than ten years, subject to one or more extensions with further participation therein optional with the parties. After the agreement was entered into, No. 618 of the 1959 Public Acts was enacted, § 57 of which (General Statutes § 33-339, subsequently amended by Public Acts 1961, No. 327, § 42) authorized voting agreements but limited their duration to a maximum of ten years.

The defendants correctly concede that a voting agreement is not, per se, invalid under the general, common-law rule. *Bator* v. *United Sausage Co.,*

supra; 19 Am. Jur. 2d, Corporations, § 681; 5 Fletcher, op. cit. §§ 2064, 2066, p. 286; note, 45 A.L.R.2d 799, 802 § 3; see *Levine* v. *Randolph Corporation,* 150 Conn. 232, 236, 240, 188 A.2d 59. Nor do they claim that the agreement here was entered into for any fraudulent or illegal purpose, even though not apparent on its face, which would deprive it of validity. Note, 45 A.L.R.2d 799, 802 § 3. Thus, the defendants do not claim that this agreement works a fraud on minority stockholders, that it confers any benefit on the plaintiff at the expense of the corporation, or that it contravenes public policy in any similar fashion. They do not claim it is anything other than a voting agreement, and they concede that, at the time of its execution, and thereafter up to and including the present time, it was not controlled by any of the statutes referred to above. Specifically, they disavow any claim that the voting agreement statute is retroactive or in any way controlling on this outstanding voting agreement. See *Garrity* v. *Radel,* 151 Conn. 349, 351 n.1, 197 A.2d 775.

Their sole claim of invalidity is predicated upon an alleged lack of a limit as to the duration of the agreement, which they claim is contrary to the public policy of Connecticut as manifested in the aforementioned proxy, voting trust, and voting agreement statutes. This claim is unsound for at least two reasons.

In the first place, the voting agreement under consideration here is not unlimited in duration. The obligation of each stockholder to vote for the other signatories as directors expressly exists only "so long as he is a stockholder of Sales." *E. K. Buck Retail Stores* v. *Harkert,* 157 Neb. 867, 892, 62 N.W.2d 288; see *Galler* v. *Galler,* 32 Ill. 2d 16, 31,

203 N.E.2d 577. Thus, even if there were a public policy forbidding voting agreements of unlimited duration, it cannot be said that that policy has been violated in the instant case. *E. K. Buck Retail Stores* v. *Harkert,* supra.

In the second place, the express wording of the statutory provisions concerning voting agreements, first appearing as § 57 of No. 618 of the 1959 Public Acts, refutes the defendants' claim. Had the General Assembly intended to invalidate outstanding voting agreements such as this one, it would have been a simple matter to have expressed such an intent in that section. See, for instance, Public Acts 1959, No. 618, § 41 (b) (General Statutes § 33-322 [b]). In fact, the General Assembly took an exactly opposite course. Subsection (f) of § 57 (now, as amended in a manner immaterial to this controversy, General Statutes [Rev. 1962] § 33-339 [c]) provided that the section "shall be construed as permissive and shall not invalidate any voting or other agreement among shareholders which is not otherwise illegal." This provision indicates a legislative intent to make it clear that the statute regarding voting agreements, including, of course, its provisions as to their duration, would not, in and of itself, affect agreements antedating its effective date. The claim that this voting agreement was invalid, as violative of the public policy of this state, is without merit.

We next determine the interpretation to be placed upon paragraph 3 of the voting agreement. The defendants contend that the restriction on the contracting stockholders' right to vote to amend the bylaws, except upon the unanimous consent of the contracting stockholders, applies only to the two bylaws specified in paragraph 2. The plaintiff

claims that the restriction extends to all bylaws existing at the time of the voting agreement, including the two in question. The court adopted the plaintiff's claim, and in this there was error.

To accept the plaintiff's construction would be, in effect, to strike from the agreement the words "so adopted." But "[e]very provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 617, 164 A.2d 413; *A. M. Larson Co.* v. *Lawler Ins. Agency, Inc.,* 153 Conn. 618, 621, 220 A.2d 32; see also *Archibald* v. *Sullivan,* 152 Conn. 663, 668, 211 A.2d 692.

Paragraph 2 of the agreement states the substance of two amendments to be made to the bylaws. In paragraph 3, the parties agreed to do two things: (1) to vote to adopt the amendments specified in paragraph 2, and (2) thereafter not to vote to amend "the by-laws so adopted" without the consent of the other parties to the agreement. The words "so adopted" operate to distinguish from all the other bylaws the two which were to be adopted pursuant to the terms of the voting agreement and to subject those two, only, to the restriction on their further amendment. As to these two bylaws, the agreement was operative. It did not purport to apply to any other bylaws.

That which the stockholders had contracted not to do directly, by necessary implication they contracted not to do indirectly. Thus, they could not, by subsequently adopting bylaws conflicting or inconsistent with the two bylaws in question, indirectly amend or repeal those two bylaws. Nor could they do this indirectly by conferring on the board of directors the power to amend the two bylaws,

either directly or by the adoption of conflicting or inconsistent bylaws.[2]

The stockholders of the corporation, as such, were authorized by statute to vote to confer upon the directors the power to amend the bylaws; General Statutes § 33-306 (b); and of course were authorized, as stockholders, themselves to amend the bylaws. General Statutes § 33-306. But the four stockholders who were signatories of the voting agreement could not, without breach of that agreement, enact bylaws amendatory of, or inconsistent with, the two bylaws in question or indirectly accomplish that result by empowering the directors so to do.

Although stockholders cannot, by contract, alter their statutory powers as stockholders, they can, as they did here, agree to limit their exercise of those powers. Since the plaintiff concedes that there was no procedural irregularity in the adoption of the new bylaws of 1965, it follows that they are valid and that the trial court was in error in holding any of them null and void. But, to the extent that the vote of April 19, 1965, adopted bylaws conflicting or inconsistent with, or amendatory of, the two bylaws in question, the defendant

---

[2] We are not here concerned with the directors' power to manage the ordinary affairs of the corporate business unfettered by stockholders' agreements. Neither of the bylaws in question trenched upon that power. *Bator* v. *United Sausage Co.*, 138 Conn. 18, 22, 81 A.2d 442; *Clark* v. *Dodge,* 269 N.Y. 410, 415, 199 N.E. 641; *Manson* v. *Curtis,* 223 N.Y. 313, 320, 119 N.E. 559. Rather, we are dealing with an extraordinary power of the directors, one which is ordinarily vested in the stockholders but which General Statutes § 33-306 (b) authorizes them to confer, in whole or in part, upon the directors. Section 33-306 (b) clearly contemplates that the stockholders may limit a grant of power to the directors to amend the bylaws. Without violation of their agreement, such a limited power was all which the stockholders could grant here.

stockholders are in breach of their contract, and the trial court was not in error insofar as it so concluded.

There remains the question of the appropriate relief to which the plaintiff has shown himself entitled. Obviously an award of money damages would be an inadequate remedy for the plaintiff, because, inter alia, the injury is irreparable, and the case affects the control of a corporation of which the plaintiff has been and still is a stockholder and director. See cases such as *Pottetti* v. *Clifford,* 146 Conn. 252, 262, 150 A.2d 207; *Lavery's Main St. Grill, Inc.* v. *Hotel Employees' Union,* 146 Conn. 93, 103, 147 A.2d 902. The trial court was not in error in awarding equitable relief, including specific enforcement of the contract and ancillary injunctive relief. Cases authorizing the granting of equitable relief are collected in an annotation in 45 A.L.R.2d 799, 817 § 6 [a], 818 § 6 [b]. Owing, however, to its error in construing the agreement as restricting amendments to all bylaws, the court erred in granting relief which exceeded that to which the plaintiff was entitled.

The defendants claim that the procedure authorized by General Statutes § 33-315 is the exclusive method of determining the right of the defendant Neil Beresth to serve as a director, and that under that section the failure to make Sales a party defendant is fatal to a determination of that issue. This claim is without merit as applied to the present proceeding. In view of our conclusion as to the intrinsic validity of the bylaws and the absence of any claim of procedural irregularity in his election, Neil must be regarded as a duly elected director. But upon the reduction in the number of directors to four, he will

necessarily cease to be a director not later than the expiration of his present term. See General Statutes § 33-317 (c). In view of his membership on the board and his potential effect on the balance of power within the board, all of which resulted from the breach of the voting agreement, the trial court was fully warranted, as incident to its power to grant effective equitable relief, in enjoining him from exercising any of the powers of a director, and it would have been warranted in issuing a mandatory injunction compelling him forthwith to resign as a director. The ordering of the appropriate relief is complicated by the fact, already noted, that Raymond S. Harrison was not made a party defendant and has not appeared in this action, although the parties have made no claim that the majority vote of the stockholders necessary to carry out the equitable relief ordered in the court below is not available without reliance on Harrison's stock ownership.

The plaintiff is entitled to an injunction ordering the defendants to join with him in taking the appropriate steps promptly to call and hold a stockholders' meeting for the following purposes, and at that meeting to vote their stock to carry out those purposes: (1) to reenact the two bylaws which were originally enacted pursuant to paragraphs 2 and 3 of the agreement; (2) to repeal all bylaws or parts of bylaws conflicting or inconsistent therewith; and (3) to withdraw from the board of directors the power to amend those two provisions of the bylaws either directly or indirectly by the adoption of conflicting or inconsistent bylaws. The plaintiff is further entitled to ancillary injunctive relief to preserve the status quo until after the foregoing action has been taken, including, if it

seems desirable, mandatory injunctive relief requiring the defendant Neil Beresth to resign as a director.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment in conformity with this opinion, after further hearing, if necessary, as to the precise terms of the equitable relief required.

In this opinion the other judges concurred.