ROBERT W. SCHUBERT *v.* CURTIS L. IVEY ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 5—decided December 22, 1969

*Kevin Tierney,* for the appellant (defendant Muscat), with whom, on the brief, was *Robert M. Lane,* for the appellants (named defendant et al.).

*Monroe Silverman,* with whom was *Stephen M. Seelig,* for the appellee (plaintiff).

KING, C. J. Indian Harbor Properties, Inc., hereinafter referred to as Indian, was a corporation which owned and operated a motel and restaurant in Greenwich. Indian was owned by seven persons, each of whom held an identical one-seventh interest, consisting of a $30,000 note of Indian and 300 shares of stock having a par value of $100. Each of the three defendants, Curtis L. Ivey, Louis C. Huck, Jr., and Victor Muscat, and the plaintiff, Robert W. Schubert, owned such a one-seventh interest. The three owners of the other one-seventh interests are not mentioned in the finding and are not involved in this proceeding.

On October 10, 1962, the plaintiff and the defendants entered into a contract (exhibit A) for the sale by the plaintiff of his entire one-seventh interest (stock and note) to the defendants in return for three promissory notes, "in the full amount of $60,000", each signed by a defendant, each in the amount of $20,000 and each payable to the plaintiff in three equal annual instalments with interest at 5 percent, and containing a provision, in the event of a default, for acceleration together with a reasonable attorney's fee. The three notes were identical except for the name and signature of the maker.

It was further provided in paragraph 4 of exhibit A that the three defendant buyers would forthwith (1) proceed to have the 300–share stock certificate which they had purchased from the plaintiff transferred to themselves in the form of two certificates of thirty-three shares each and one certificate of thirty-four shares (making a total of 100 shares) in the name of each of the three defendants, (2) endorse the certificates in blank, and (3) deliver the nine certificates (representing the total of the 300 shares) to the plaintiff to be held by him as security

for the "full payment of the notes". It was further provided, in paragraph 6, that "[a]t such time as the notes are paid pursuant to their terms in installments of 33-⅓%, the Seller [the plaintiff] shall deliver to the Buyers [the defendants] 3 of the above-referred to 9 certificates of stock, for a total of 100 shares, i.e., when the Buyers pay over to the Seller the sum of $20,000 together with accumulated interest, the . . . [plaintiff] shall deliver to the Buyers 3 certificates for 100 shares of said stock". As hereinafter pointed out, paragraph 6 of exhibit A was significantly changed by paragraph 4 of exhibit C.

Later, on December 18, 1962, the parties entered into a "Supplemental Agreement" (exhibit C), in which they stated that they were carrying out the transactions referred to in exhibit A despite the expiration of the time period. Exhibit C also provided for the delivery by the defendants of the purchased stock and Indian's note to an escrow agent, Henry D. Sforza, to hold, instead of the plaintiff himself, as security for the payment of the notes. Exhibit C contained certain modifications in the foregoing provisions of paragraph 6 of exhibit A relating to the partial release of their stock to the defendants upon the making of each annual instalment payment on the notes.

None of the defendants made any payments to the plaintiff, and the plaintiff, after the first annual instalment payment became due, sent an affidavit of nonpayment to the escrow agent (Sforza), who delivered to the plaintiff the nine stock certificates which had been held in escrow as security. At this time the stock had become valueless. Indian's $30,000 note which the plaintiff had sold to the defendants was never returned to him and was also

apparently valueless. In January, 1964, the plaintiff, upon proper notice, sold the 300 shares of stock for $300 and instituted this suit for the balance owing.

The real dispute between the parties centers on one proposition, and that is whether the defendants are jointly liable to the plaintiff in the principal sum of $60,000 or severally liable in the principal sum of $20,000 each as represented by the three notes. In other words, the defendants claim that their obligation is to pay the principal sum of $20,000 apiece, in accordance with the terms of each of the three notes. The plaintiff claims, however, that the contract imposes on the three defendants a joint obligation for $60,000 and that the obligation of each defendant on his $20,000 note, even though several, does not affect his joint liability under the contract. The court held in substantial accordance with the plaintiff's claim and rendered judgment against the three defendants jointly in the amount of $60,000 less a deduction of the $300 realized by the plaintiff on the sale of the collateral which is not the subject of controversy, plus accrued interest to date of judgment in the amount of $18,035 and counsel fees of $8000.

In considering the expressed intent of a contract evidenced, as was this, by multiple writings, all of the writings should be considered and an endeavor made to ascertain the expressed intent of the contract as a whole. *Massaro* v. *Savoy Estates Realty Co.*, 110 Conn. 452, 459, 148 A. 342; Restatement, 1 Contracts § 235 (c); Restatement, 1 Contracts, Conn. Annot. § 235 (c), p. 140; 17A C.J.S., Contracts, § 298; 17 Am. Jur. 2d 668, Contracts, § 264.

Under the general common-law rule, where two or more promisors enter into an agreement with a

third party for one performance, there is a presumption that the promisors are contracting jointly in the absence of words of severance in the contract. 2 Williston, Contracts (3d Ed.) § 320; Restatement, 1 Contracts §§ 112, 113. While the Connecticut rule as to partnership obligations is not identical (see Restatement, 1 Contracts, Conn. Annot. §§ 112, 113, p. 65), Connecticut is in accord with the common-law rule in the case of a contract such as the one in the present case. See *Security Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 50 Conn. 233, 244; 4 Corbin, Contracts § 295.

Of course the effect of a joint obligation, as distinguished from a several obligation, is that each joint promisor is liable for the whole performance jointly assumed where, as was the case here, all three joint promisors are made parties defendant and none is under any disability. Restatement, 1 Contracts §§ 117, 118. As pointed out in 4 Corbin, op. cit. §§ 925 and 929, the fatal effect which the common law attached to the nonjoinder of one of a number of joint promisors has been ameliorated by statute in many jurisdictions, as it has in Connecticut. Practice Book § 62; General Statutes (Rev. to 1968) §§ 52-108, 52-227; Restatement, 1 Contracts, Conn. Annot. §§ 117, 118, pp. 66, 67; see also cases such as *Woodruff* v. *Perrotti,* 99 Conn. 639, 644, 122 A. 452.

The contract, construed as a whole, leaves much to be desired in the clarity and consistency of its expression of the parties' intent. As might be expected, this in turn has led to the dispute as to whether each defendant has a joint principal liability of $60,000 or a several principal liability of $20,000. We must, however, ascertain the intent as expressed in the contract as a whole.

" 'The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used.' *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427." *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828.

We turn now to the contract. The basic writing (exhibit A) provides in paragraphs 1 and 2 for the sale of the plaintiff's one-seventh interest in Indian to the defendants. If the defendants could act in harmony, that sale would give them control of Indian, since each of the three already owned a one-seventh interest. Clearly there was a sale of the plaintiff's entire one-seventh interest to the defendants as a group, not a sale of one-third of the plaintiff's interest to each one of the three defendants. It was only in the provisions as to collateral to secure the notes that there was any division between the defendants of the 300 shares of Indian stock which they had purchased, and this division occurred only after title to the 300 shares of stock had passed to them as a group.

It is possible, however, for a contract to provide for a sale of stock to purchasers jointly as a group, as was the case here, and still provide for a several, pro rata liability for payment of the purchase price. 17A C.J.S., Contracts, §§ 350, 352(a). Since the contract was completely executed as to the sale of the plaintiff's one-seventh interest in Indian, the only remaining performance was the payment for that interest by the defendants. Thus we are brought to the decisive question as to whether the defendants' performance was a joint or several

undertaking. Restatement, 1 Contracts §§ 112, 113.

An unusual, and we think decisive, feature of the contract is that nowhere is it stated that the buyers are to pay $60,000 for the Indian stock and note purchased from the plaintiff. Instead, it is stated in paragraph 2 of exhibit A that they are to deliver three promissory notes "in the full amount of $60,000, copies of which are annexed hereto and made a part hereof". The notes, as already pointed out, are for $20,000 apiece, and each is signed by a separate one of the three defendants. In other words, there was no "contract price" of $60,000 to be paid to the plaintiff as a joint obligation of the defendants. Rather, the defendants' performance was to consist of the execution and delivery to the plaintiff of three promissory notes in the principal amount of $20,000 each. Of course this would result, as mentioned in the quoted portion of paragraph 2 of exhibit A, in the plaintiff's receiving notes "in the full amount", that is, in the total amount, of $60,000. But the quoted phrase did not express, nor could it reasonably be construed as expressing, an intention that the contract price for the stock was a joint obligation of the defendants for the payment of $60,000.

The conclusion that the defendants' obligation of payment was a several one, represented by, and in accordance with the terms of, their respective promissory notes, is dispositive of this appeal adversely to the contention of the plaintiff.

This conclusion is fortified, if any fortification is needed, by the provisions of paragraph 4 of exhibit C which modifies paragraph 6 of exhibit A with respect to the provisions for the partial release, upon the payment of an annual instalment on a given note, of the stock held as collateral for the

payment of the notes. While the language of paragraph 4 of exhibit C falls short of complete clarity, by contrasting it with the original provision of paragraph 6 of exhibit A, already summarized, its meaning becomes reasonably clear.

Paragraph 4 of exhibit C concerns the duty of the escrow agent with respect to the stock certificates and corporate note which he holds as collateral for the payment of the notes and supersedes, to the extent of any inconsistency, the provisions of paragraph 6 of the original contract. Paragraph 4 of exhibit C provides for the return to each respective payor-buyer of his corporate stock certificate for thirty-three shares of stock upon payment of the first annual instalment on his $20,000 note. Similar language was employed as to the payment of the second and of the third (final) annual instalments. Such a provision is consistent only with a several undertaking as to payment. Were it not a several undertaking, the making by a single defendant of the annual payment of one-third of his $20,000 note would not normally entitle him, and under the original language of paragraph 6 of exhibit A did not entitle him, to the return of one-third of his collateral unless each of the two other defendants paid the annual instalment due on his note.

It seems likely that the draftsman contemplated that the defendants would perform in accordance with their agreement, in which case each would pay his note according to its tenor and the total of the three $20,000 notes would come to "the full amount of $60,000". Actually none of the defendants has ever paid anything to the plaintiff.

The court was in error in concluding that the contract imposed a joint liability on the three defendants in the original principal amount of $60,000.

No liability for payment, other than that on the notes, was imposed by the contract, and this liability, as already pointed out, was a several liability in the original principal amount of $20,000 apiece as stated in each of the three notes. This determination makes it necessary to set aside the judgment and remand the case to the Superior Court for the rendition of a judgment in favor of the plaintiff against each of the three defendants in the principal amount of $19,900 instead of $59,700, together with interest and attorneys' fees on each note.

There is error, the judgment is set aside and the case is remanded for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.