ANNA H. DUGAN *v.* NICHOLAS GRZYBOWSKI

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued May 3—decided June 20, 1973

*Harry L. Nair,* for the appellant (plaintiff).

*Edward C. Krawiecki,* for the appellee (defendant).

SHAPIRO, J.  In this action, the plaintiff, Anna H. Dugan, sought to foreclose a mortgage given to secure a promissory note.  The defendant, Nicholas Grzybowski, successor in title to the original mortgagor, filed no answer or disclosure of defense and the court rendered judgment in favor of the plaintiff in the amount of $1904.92 as the unpaid principal balance of the mortgage debt, together with reasonable attorney's fees and costs.  On the appeal, the plaintiff's only attack relates to the method the court used in fixing the amount of the unpaid balance due on the note.  The plaintiff contends that the sum

of $2896.09 was due her. Put simply, the parties agreed that if the court adopted the plaintiff's theory of computation, the principal unpaid balance would be $2896.09, whereas on the defendant's theory of computation that sum would be $1904.92.

The parties have no quarrel with respect to the facts. On November 15, 1962, Joseph Krukowski, predecessor in title to the defendant, executed a promissory note to the plaintiff.[1] The note was secured by a mortgage on premises known as 22 Townley Street in the city of Hartford. By the terms of the note, Krukowski agreed to pay to the

---

[1] "$10,000.00      Hartford, Connecticut
November 15, 1962

FOR VALUE RECEIVED, I promise to pay ANNA H. DUGAN, or order, the sum of TEN THOUSAND (10,000.00) DOLLARS with interest at the rate of six (6) per centum per annum, payable monthly, upon the unpaid balance of this note, together with all taxes levied on this note against the holder hereof and all costs of collection, including reasonable attorney's fees incurred in any action brought to collect this note or to foreclose the mortgage securing the same; and I promise to pay said principal sum and interest in monthly installments, as follows: ONE HUNDRED ELEVEN and 03/100 (111.03) DOLLARS one month from the date hereof and a like amount each and every month thereafter until said principal sum, with interest, is fully paid, it being agreed that each monthly installment shall be applied, first, to the payment of interest on the unpaid principal of this note, and the balance on account of the principal of this note.

In the event of default in the payment of any of said monthly installments or in the payment of taxes or municipal assessments on the premises mortgaged to secure this note, for a period of fifteen (15) days after any of the same become due and payable, or failure to keep said premises insured for the benefit and to the satisfaction of the holder of this note, or if title to said premises shall become vested in anyone other than the maker hereof, then the whole of this note shall immediately, at the option of the holder hereof, become due and payable.

The maker hereof reserves the right to anticipate any or all of said final installments before any of the same become due and payable.

      Joseph Krukowski

---
     JOSEPH KRUKOWSKI"

plaintiff the sum of $10,000 with interest at the rate of 6 percent per annum, payable monthly, on the unpaid balance of the note, together with all taxes levied on the note against the holder and costs of collection, including reasonable attorney's fees involved in collecting the note or foreclosing the mortgage. The note provided that the principal sum and interest were to be paid in monthly installments of $111.03, commencing one month from the date thereof and a like amount each and every month thereafter until the principal sum, with interest, was fully paid. The instrument further provided that each monthly installment would be applied first to the payment of interest on the unpaid principal of the note and the balance would be applied on account of the principal. The following clause was also contained in the note: "The maker hereof reserves the right to anticipate any or all of said final installments before any of the same become due and payable." The note contained no express maturity date.

During the first seventy-seven months of the life of the note, the following payments were made by the owner of the equity: fifty-two payments of $150.00, one payment of $140.00, seventeen payments of $111.03 and six payments of $100.00, all resulting in a net excess of $1878.20 over and above that required under the terms of the note. No payments were made on the note after May 17, 1969, and the defendant was concededly in default.

The total amount paid on the note through May 17, 1969, the date of the last of the seventy-seven payments, was $10,427.51. Had the obligor of the note made payments of the precise amount of the monthly installment of $111.03 over a period of ten years, it is agreed that the total payments would

have amounted to $13,323.60. The question which the court decided was whether the prepayment of an amount of $1878.20 over and above the amounts due monthly reduced the unpaid principal. The plaintiff asserted at the trial and presses again on appeal her contention that she is entitled to "her full investment of principal and interest computed on the note to maturity, whether or not pre-payments are made." The plaintiff insists that the sum of $2896.09 is due her to bring the total amount of the note to $13,323.60, despite the plain provision of the note giving the mortgagor the right to anticipate "any or all" of the final installments.

In the discussion of general principles applicable to this dispute, both parties cite *Abbe* v. *Goodwin,* 7 Conn. 377, 384. That case entailed a mortgage secured by four promissory notes maturing on different dates. None of the notes contained a prepayment provision, and this court simply held that without a prepayment clause, the mortgagor could not compel the mortgagee to accept payment or to discharge the mortgage before it is due. That rule, which is not questioned here, is elementary. See *Trahant* v. *Perry,* 253 Mass. 486, 489, 149 N.E. 149; *Peter Fuller Enterprises, Inc.* v. *Manchester Savings Bank,* 102 N.H. 117, 152 A.2d 179; cf. *Bloomfield Savings Bank* v. *Howard S. Stainton & Co.,* 60 N.J. Super. 524, 159 A.2d 443. See generally, 2 Jones, Mortgages (8th Ed.) § 1137; 3 Powell, Real Property, p. 656 n.4; 59 C.J.S. 695, Mortgages, § 447 (a).[2]

---

[2] As one textwriter explains the custom of denying prepayment rights, "[t]his freedom of the mortgagee from anticipation is of increasing value as the mortgage becomes more and more an investment instrument, designed to secure a regular flow of income. Current institutional mortgages customarily exact substantial amounts as conditions of accepting prepayment." 3 Powell, Real Property,

The question before the court involved the interpretation of the prepayment clause in the mortgage note: "The maker hereof reserves the right to anticipate any or all of said final installments before any of the same become due and payable." The court, accepting the defendant's theory, concluded that the defendant owed $1904.92 as the unpaid principal balance of the mortgage debt, and not $2896.09, the amount claimed by the plaintiff. The court arrived at the lower figure by computing interest due on the unpaid principal when a payment was made. As the court noted in its memorandum of decision, the purpose of the anticipatory clause in the promissory note whereby any advance payments were to be credited on the "final installments" was to protect the lender. Specifically, the fact that the borrower had made an advance payment would not relieve him from his obligation to pay the next regular monthly installment; rather, an advance payment would only make the life of the note shorter. In support of its conclusion, the court reasoned that if the mortgagor could compel the

---

p. 656 n.4. In contrast, a mortgage note designed primarily to give the lender security for the timely repayment of his money at a profitable rate of interest will more likely contain a prepayment clause without a penalty attached. The object of the clause is generally to encourage repayment, whereas in the absence of such a clause, courts tend to construe the mortgage note as intended to secure regular investment income to the mortgagee over a definite period of time. Compare, as examples of the first instance, *Westminster Investing Corporation* v. *Equitable Assurance Society*, 443 F.2d 653 (D.C. Cir.); *Schotte* v. *Meredith*, 138 Pa. 165, 20 A. 936; and *Beth-June, Inc.* v. *Wil-Avon Merchandise Mart, Inc.*, 211 Pa. Super. 5, 233 A.2d 620, with *Abbe* v. *Goodwin*, 7 Conn. 377, 384; *Peter Fuller Enterprises, Inc.* v. *Manchester Savings Bank*, 102 N.H. 117, 152 A.2d 179; *Lisman* v. *Michigan Peninsular Car Co.*, 50 App. Div. 311, 315-16, 63 N.Y.S. 999; and *Hensel* v. *Cahill*, 179 Pa. Super. 114, 116 A.2d 99, as examples of the latter. See generally, 55 Am. Jur. 2d 512, Mortgages, § 397.

mortgagee to accept payment one month after the date of the mortgage, the plaintiff's interpretation would create an unconscionable result: on the plaintiff's theory, the mortgagor would owe $3323.60 for one month's use of $10,000. The court observed that such a result seemed not only unconscionable but bizarre.

We agree with the court but on different grounds. Of course, if a provision is susceptible of two interpretations, that which is more fair, reasonable and rational is to be preferred. *Perruccio* v. *Allen,* 156 Conn. 282, 286, 240 A.2d 912; *Peoples* v. *New England Lumber & Box Co.,* 107 Conn. 724, 726, 142 A. 387; *Volk* v. *Volk Mfg. Co.,* 101 Conn. 594, 602, 126 A. 847. The plaintiff's theory collapses, however, not simply because it would lead to bizarre or unconscionable results, but because it ignores the payment provision in the note: "[It is] *agreed that each monthly installment shall be applied, first, to the payment of interest on the unpaid principal of this note, and the balance on account of the principal of this note.*" (Emphasis added.) This provision for monthly amortization provides the clue to the interpretation of the prepayment clause. It unequivocally allocates each payment first to earned interest as of the date of payment, and the remainder of that payment to the reduction of outstanding principal. The plaintiff's theory is inconsistent with the operation of this provision, since it calls for the allocation of any advance payment or overpayment to the payment of unearned interest rather than to the direct reduction of principal. This allocation, in turn, would defeat the prepayment privilege by attaching what would be essentially a penalty for prepayment. Under the terms of the note, the plaintiff was entitled to recoup her investment in terms

of principal and interest, which, in the business world, means compensation for the use or forbearance of money. *Commissioner of Internal Revenue* v. *Meyer,* 139 F.2d 256 (6th Cir.); cf. *Wilshire Holding Corporation* v. *Commissioner of Internal Revenue,* 262 F.2d 51, 53 (9th Cir.). Although the plaintiff has devised an ingenious argument, the court's interpretation was more in harmony with the rules of construction which dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. *Weil* v. *Beresth,* 154 Conn. 12, 19, 220 A.2d 456; *Byram Lumber & Supply Co.* v. *Page,* 109 Conn. 256, 265, 146 A. 293. Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions. *Eastern Bridge & Structural Co.* v. *Curtis Building Co.,* 89 Conn. 571, 576, 94 A. 921.

With respect to the words "final installments" in the anticipation clause, the plaintiff insists that an amortization schedule which she introduced into evidence supplies the only acceptable definition. It is unknown whether such a schedule was discussed by the mortgagor and mortgagee or whether the exhibit was in existence at the time the mortgage was executed. This printed schedule, which was neither part of the note nor referred to therein, contemplated 120 monthly payments in equal amounts of $111.03 and was obviously designed to aid the mortgagee in computation. By itself, the schedule constitutes a document extraneous to the contract between the parties. Although it might be evidence of the plaintiff's motives, still the controlling factor is the intent expressed in the contract, not the in-

tent which the plaintiff may have had or which the court believes she ought to have had. *Perruccio* v. *Allen,* supra, 285. An unexpressed intent is of no significance. *Ziulkoski* v. *Barker,* 94 Conn. 491, 494, 109 A. 185; see also *Schubert* v. *Ivey,* 158 Conn. 583, 589, 264 A.2d 562; *Hansel* v. *Hartford-Connecticut Trust Co.,* 133 Conn. 181, 194, 49 A.2d 666. The plaintiff asserts, however, that the prepayment clause requires the application of each excess payment to "the final installments" as reflected in this schedule, in inverse order of their maturity. No mention is found in the note of this method of applying payments in inverse order. Again, the plaintiff's interpretation ignores the provision whereby the mortgagee had agreed to apply payments beyond earned interest to the reduction of the principal. Furthermore, it overlooks the fact that once the mortgagor made overpayments, the printed amortization schedule, if one was then in existence, became useless and a new computation had to be made.

There are other inconsistencies in the plaintiff's theory. As we have remarked, the printed schedule on which the plaintiff so heavily relies shows that, in accordance with the amortization clause, each payment of $111.03 was to be allocated first to interest earned for each month's use of the remaining principal, and second to reduce the remaining principal. With the first payment of $111.03, the schedule apportions $50 of that sum to earned interest and $61.03 to the principal; the balance of the loan is thus shown to be $9938.97. Thus, assuming the mortgagor immediately thereafter tendered the balance of $9938.97, he would have thereby extinguished his obligation under the note. It would have been a violation of the agreement for the mortgagee to have

refused the tender, in view of the prepayment privilege she conceded to the lender. Furthermore, the primary obligation of the mortgagor was the repayment of the principal sum of $10,000 with interest; it was not an agreement for the payment of $3323.50 as finance charges in addition to the repayment of the principal. Second, after the allocation of each payment to earned interest, the remainder of the payment reduced accordingly the principal by virtue of the amortization clause in the note. In exercising the prepayment privilege, the mortgagor diminished the basis for compensation to the mortgagee, that basis being the loss of the use of the outstanding principal. See *Weller* v. *Commissioner of Internal Revenue*, 270 F.2d 294, 296 (3d Cir.); cf. *Cochran* v. *Boston*, 211 Mass. 171, 173, 97 N.E. 1100. If no principal remained, no interest could be earned; but if unpaid principal did remain, interest would grow only out of that diminished amount.

The mortgagee may well have assured herself of receiving what she now claims to have been the full contemplated investment by refusing the mortgagor the privilege of prepayment. Alternatively, she could have required the mortgagor to agree to pay the sum of $13,323.60 as the primary obligation. The schedule might then have shown that the first thirty payments of $111.03 were to be allocated to a finance charge of $3323.60 beyond the principal sum. A third recognized method of securing additional income to the mortgagee would entail attaching a premium of a fixed amount in order to exercise the prepayment privilege. Thus, although a lender customarily has a variety of methods to recoup a handsome investment in a prepaid mortgage loan, the plaintiff did not avail herself of them in this case.

The view we take is dispositive of the case, and it is unnecessary to discuss subordinate claims.

There is no error.

In this opinion LOISELLE, MACDONALD and BOG-DANSKI, Js., concurred.

HOUSE, C. J. (dissenting). I am unable to concur in the conclusions reached in the majority opinion. The maker of the note in question not merely promised to pay the principal sum of $10,000 with interest at 6 percent per annum but specifically agreed with the payee on the terms and times when that debt should be paid, viz.: "I promise to pay said principal sum and interest in monthly installments, as follows: One Hundred Eleven and 03/100 (111.03) Dollars one month from the date hereof and a like amount each and every month thereafter until said principal sum, with interest, is fully paid." As the majority opinion correctly notes, citing *Abbe* v. *Goodwin*, 7 Conn. 377, 384, without a prepayment clause the maker of the note could not compel the holder to accept any payment before it became due. The prepayment privilege reserved was simply "the right to anticipate any or all of said final installments before any of the same become due and payable." The installments, as expressly provided in the note, were in the amount of $111.03. The holder of the note was, accordingly, entitled to assume that she had a secured mortgage investment at 6 percent running for ten years from the date of the note and to be repaid in 120 fixed monthly installments, subject only to the privilege reserved by the maker to anticipate any or all of said final "installments" which were expressly stated to be in the amount of $111.03.

I cannot agree with the conclusion of the trial court that the terms agreed on for payment of the note were "unconscionable" and "bizarre," and they were clearly not usurious. Nor can I concur with the result reached in the majority opinion which disregards the plain and specific provisions of the note regarding payment in stated installments of fixed amounts.