Steven R. and Teresa M. SKYLES,
Plaintiffs–Appellants/Respondents,

v.

Chester D. and Leeta BURGE,
Defendants–Respondents/Appellants.

Nos. 57307, 57457.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 27, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 20, 1990.

Application to Transfer Denied
June 19, 1990.

Thomas Carter, II, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for plaintiffs-appellants/respondents.

Randy Michael Smith, Deeba, Destefano, Sauter & Herd, St. Louis, for defendants-respondents/appellants.

CRANDALL, Judge.

Plaintiffs, Steven and Teresa Skyles, appeal from the grant of summary judgment in favor of defendants, Chester and Leeta Burge, in plaintiffs' action for declaratory judgment. Defendants also appeal from the denial of their motion for attorney's fees. We reverse and remand in part and affirm in part.

Plaintiffs signed a promissory note and deed of trust securing the note for a single family residence in St. Louis County. The agreements were dated January 31, 1986 and February 27, 1986, respectively. Both contracts were executed in favor of defendants. Neither document contained a prepayment clause which delineated the rights of the parties in the event that the plaintiffs wished to retire the mortgage indebtedness ahead of schedule.

About one year after the mortgage instruments were executed, plaintiffs sought to refinance the note held by defendants. Defendants, however, refused to verify the balance owed on the note which the lending institution required as a prerequisite to plaintiffs' refinancing the note. Defendants also declined plaintiffs' offer of the balance of principal and interest due, plus an additional two percent prepayment penalty.[1]

Plaintiffs subsequently brought this action against defendants. Their petition was in eleven counts. Plaintiffs moved for summary judgment on Counts II and IV. In that motion, plaintiffs alleged that defendants had breached their contractual obligation to plaintiffs because the note did not prohibit prepayment (Count II) and that, pursuant to Section 408.036, RSMo (1986), plaintiffs had a statutory right to prepay the mortgage indebtedness (Count IV). Defendants also moved for summary judgment.

On October 17, 1988, the trial court sustained defendants' motion for summary judgment on Counts II and IV.[2] On November 28, 1988, plaintiffs moved for reconsideration. On August 18, 1989, plaintiffs dismissed without prejudice the remaining counts of their petition and the trial court overruled plaintiffs' motion for reconsideration and designated its order of October 17, 1988 final for purposes of appeal. On September 5, 1989, defendants dismissed their counterclaim without prejudice. Plaintiffs filed their notice of appeal on September 13, 1989. On October 3, 1989, defendants filed a motion for attorney's fees. The trial court denied that motion on October 5, 1989.

In ruling on a motion for summary judgment, the trial court and the appellate

---

1. Although plaintiffs' tender of the amount of indebtedness plus the prepayment penalty may have been conditional rather than absolute, defendants concede that actual tender would have been rejected and therefore would have been a useless act on the part of plaintiffs. Further, the question of proper tender was not raised as a genuine issue of material fact in the trial court and is not directly challenged on appeal. *See* Rule 74.04(c). We therefore treat plaintiffs' tender as legally sufficient to permit review of the issues raised by the parties in this appeal.

2. Neither defendants nor plaintiffs stated with particularity the grounds for summary judgment in their respective motions, as provided in Rule 74.04(c). The trial court, in adjudicating this declaratory judgment action, simply sustained defendants' motion for summary judgment without a specific declaration of what rights were being adjudicated. Despite this sparse record, we are able to glean the issues presented on appeal and address them.

court must scrutinize the record in the light most favorable to the party against whom the motion for summary judgment was filed and against whom judgment was rendered, and must accord to that party the benefit of every doubt. *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 115 (Mo.App. 1986). Here, the parties agree there are no factual issues in dispute.

The issue before us then is whether defendants were entitled to summary judgment as a matter of law.[3] The salient issue raised on appeal is whether prepayment is prohibited, in residential real estate transactions, where the note does not by specific language either prohibit or permit prepayment.

A review of the evolution of mortgage prepayment suggests that the common law before the nineteenth century did not deny the mortgagor's right to prepay. In medieval England, the law of the "gage" (the forerunner of the contemporary mortgage) provided that, when there was a fixed term for payment of the debt, the creditor could not demand payment prior to the expiration of that term; and, if no term was specified, the debt was due on demand. Alexander, *Mortgage Prepayment: The Trial of Common Sense*, 72 Cornell L.Rev. 288, 293 (1987). Although the debtor did not enjoy an absolute right to prepay at will, there is no indication that prepayment without the creditor's consent was prohibited. *Id.* at 293–294. Usually, gages required possession by the creditor during the period of indebtedness and the rents and profits received by the creditor from the land were not applied against the principal indebtedness. The creditor's failure to apply these proceeds to the principal indebtedness led to the characterization of this form of gage as a dead gage, or "mort gage." *Id.* at 294.

Another early mortgage, the "Welsh mortgage," permitted the creditor to take possession of the mortgaged property and to receive rents and profits as a form of interest rather than as a payment of principal. *Id.* This mortgage differed from contemporary mortgages in that it did not specify a definite period of time for prepayment of the debt. Use of this mortgage declined because of its attendant uncertainties: the creditor never knew when the debtor might repay the debt; and yet the creditor couldn't foreclose and obtain clear title to the property to convey to subsequent purchasers. *Id.* at 295.

During the sixteenth and seventeenth centuries, the Welsh mortgage was replaced by a security instrument in the form of a conditional fee. As security for the indebtedness, the debtor conveyed to the creditor a fee simple estate upon the condition that, if the debtor paid principal and interest on a certain date, the creditor would reconvey the estate to the debtor. *Id.* at 295. This defeasible fee simple permitted the creditor to anticipate a date certain upon which either the debtor would repay or the conditional limitation would disappear, leaving an estate in fee simple vested in the creditor. *Id.* This type of mortgage usually permitted the debtor to retain possession of the property. *Id.* at 296. The creditor had the right to foreclose; and the debtor had the right to redeem the property upon payment of principal, interest, and costs. *Id.* The mortgage instrument thus became primarily a means of providing security for the debt and the terms and conditions of the underlying contract became important. *Id.*

Since the early nineteenth century, the general rule has been that a debtor cannot, without the lender's consent, prepay a mortgage debt. 59 C.J.S. Mortgages Section 447(a) (1949). One early case, *Abbe v. Goodwin*, 7 Conn. 377 (1829), entailed a mortgage secured by four promissory notes maturing on different dates. None of the notes contained a prepayment provision. The Supreme Court of Connecticut held that, without a prepayment clause, the mortgagor could not compel the mortgagee to accept payment or to discharge the mortgage before it was due. The decision em-

---

**3.** Plaintiffs' points relied on include an allegation of error in the trial court's overruling plaintiffs' motion for summary judgment. An appeal does not lie from a denial of a motion for summary judgment. *Kelley v. Shelter Mutual Ins. Co.*, 748 S.W.2d 54, 57–58 (Mo.App.1988).

braced the rule of "perfect tender in time" and reflected the increased application of contract law principles to mortgage law. Under *Abbe,* the mortgagee could not even be compelled to accept in advance a payment of principal, accrued interest, and interest that would accrue in the future during the life of the note. *Contra Mahoney v. Furches,* 503 Pa. 60, 468 A.2d 458 (Pa. 1983).

At the present time, the perfect tender in time rule remains in effect in the majority of states, except where it has been modified by judicial decision or by statute. *See Troncone v. Canelli,* 147 A.D.2d 633, 538 N.Y.S.2d 39 (A.D. 2 Dept.1989); *Arthur v. Burkich,* 131 A.D.2d 105, 520 N.Y.S.2d 638 (A.D. 3 Dept.1987); *Dugan v. Grzybowski,* 165 Conn. 173, 332 A.2d 97 (1973). *But see Mahoney,* 468 A.2d at 458. The underlying reasons for the adoption of this principle are varied. One justification for denying a mortgagor's prepayment right is that a mortgage is an investment instrument designed to secure for the mortgagee not only a regular flow of income over a definite period of time, *see Dugan,* 332 A.2d at 99 n. 2, but also income at a predictable rate of return. *See* Alexander, 72 Cornell L.Rev. at 312. Another rationale for disallowing prepayment is that the existence of a promissory note in which the debt is fully amortized by specific payments in equal monthly installments suggests that no early payment is permitted. *Id.* at 314; *see also Hensel v. Cahill,* 179 Pa.Super. 114, 116 A.2d 99 (1955). In addition, courts have relied on the fact that the rights of the mortgagee and mortgagor are equal and reciprocal in that a mortgagee cannot enforce the payment of the debt before its maturity and a mortgagor cannot compel his mortgagee to accept payment before it is due. Alexander, 72 Cornell L.Rev. at 317; *see, e.g., Peryer v. Pennock,* 95 Vt. 313, 115 A. 105 (1921).

Relying on principles of contract law, courts have found, however, that the precise language of the promissory note often entitles a mortgagor to prepay his indebt-edness. Thus, promissory notes which specify payments "on or before" a date certain, *Garner v. Sisson Properties,* 198 Ga. 203, 31 S.E.2d 400 (1944), as well as "in" or "within" a certain period have been construed by courts to grant a prepayment privilege. *Schotte v. Meredith,* 138 Pa. 165, 20 A. 936 (1890). *See Alexander,* 72 Cornell L.Rev. at 318.

Despite the *Abbe* case and other historical antecedents of the rule of perfect tender in time, it would seem, at least in terms of residential real estate, that a mortgagor could discharge the debt by payment in full of all the principal due and all the accrued and unaccrued interest that would be due over the term of the note. Consistent with the policy against restraints on alienation, even where the mortgage explicitly states there is no right to prepay the note, if the mortgagor can provide the mortgagee with the full benefit of his bargain under the terms of the note, he will be allowed to have a release of his land following the substitution of security or other arrangement. *Mahoney,* 468 A.2d at 461 n. 1. In the case before us, defendants affirmed that very principle when they offered to discharge plaintiffs' obligation upon payment of the amount of the loan plus a certain amount of unaccrued interest.

When addressing the issue of mortgage prepayment, the question then is whether the mortgagor can compel the mortgagee to accept prepayment of principal and thus avoid future payment of interest under the note. *See Hoyne v. Prudential Sav. & Loan Ass'n,* 711 S.W.2d 899 (Mo.App.1986). As indicated in the discussion above, the historic and prevailing view is that, if the existing mortgage contains no prepayment clause and the mortgage debt is not due, the mortgage holder cannot be compelled to accept payment of the unmatured balance.[4] *See Dugan,* 332 A.2d at 99; Alexander, 72 Cornell L.Rev. at 289; 59 C.J.S. Mortgages Section 447(a).

---

**4.** *Compare* 24 C.F.R. Section 203.22(b) (1986); 38 C.F.R. Section 36.4310 (1986). In loans guaranteed by the Federal Housing Administration or the Veteran's Administration, the borrower has the right to prepay, without penalty, at any time.

Missouri, however, has enacted Section 408.036 which regulates prepayment penalties on residential real estate mortgages:

No prepayment penalty shall be charged or exacted by a lender on any promissory note or other evidence of debt secured by residential real estate when the full principal balance thereof is paid after five years from the origination date and prior to maturity; in no event shall any prepayment penalty exceed two percent of the balance at the time of prepayment.

This statute therefore restricts the application of the perfect tender in time rule to residential real estate mortgages. If the note and mortgage are silent on the subject of prepayment, the statute establishes a maximum allowable prepayment penalty and grants the right to repay without penalty after five years. Absent this statute, the mortgagor might be required to pay the full principal, the accrued interest, and the unaccrued interest that would be due during the life of the note in order to discharge his contractual obligation to the mortgagee on the unmatured note. This statute limits the penalties which can be imposed on the mortgagor for prepayment.

■ Section 408.036 does not operate to prevent the mortgagee and mortgagor from contracting in the note for a predetermined penalty for prepayment, as long as the terms do not run afoul of the statute. For example, the parties could specify a penalty of two percent of the balance after one year, with a built-in reduction of one-half percent per year until, during and after the fourth year, the maximum penalty would be reduced to one-half percent. In any case, the mortgagor would be entitled to prepay the principal after five years with no penalty. In the absence of specification in the note, however, the terms of the statute controls.

Section 408.036 was enacted by the Missouri Legislature originally as part of a package designed to promote the residential construction industry. *Hoyne*, 711 S.W.2d at 904 (citing Laws of Missouri 1974–1975, at 968, 972). The statute represents a legislative balancing of the interests of the mortgagor and the mortgagee which are consistent with the policy against restraints on alienation. The two percent penalty provision protects the mortgagee, to some extent, against the financial loss of both his transaction costs and unaccrued interest if the loan is prematurely paid off because of a decline of interest rates during the first five years of the loan. The mortgagee is thereby provided with some investment stability, especially in periods of fluctuating interest rates. Yet, at the same time, the marketability of the mortgagor's property is not impaired by a long term loan not reflective of current interest rates and the mortgagor is not locked into a loan at an interest rate higher than the prevailing rate.

We therefore conclude that the trial court erred in sustaining defendants' motion for summary judgment based upon its implicit finding that prepayment of the mortgage indebtedness was prohibited as a matter of law.

■ We next consider defendants' appeal in which they assert that the trial court erred in denying their motion for attorney's fees. Defendants filed their motion for attorney's fees on October 3, 1989. Prior to that date, on August 18, 1989, the trial court had designated its order disposing of Counts II and IV of plaintiffs' petition final for purposes of appeal. That same day, plaintiffs dismissed without prejudice the remaining counts of their petition. On September 5, 1989, defendants dismissed their counterclaim without prejudice.

The trial court retained control over the judgment entered on August 18, 1989 within the parameters of Rule 75.01. Rule 75.01 authorizes the court, for good cause, to vacate, reopen, correct, amend or modify its judgment within thirty days. It does not grant the trial court power to hold independent, separate proceedings subsequent to the final judgment. *Cimasi v. City of Fenton*, 659 S.W.2d 532, 537 (Mo. App.1983). When defendants filed their motion for attorney's fees, more than thirty days had elapsed from the date of final judgment. Thus, the trial court no longer retained control over the judgment. The

subsequent dismissals by plaintiffs and defendants operated to deprive the trial court of jurisdiction to award attorney's fees. *See Schenberg v. Schenberg*, 307 S.W.2d 697 (Mo.App.1958). When a suit is dismissed, "the action is no longer pending and the court has no jurisdiction of the parties or of the subject matter...." *Id.* at 700.

The trial court correctly denied defendants' claim for attorney's fees because the trial court lacked jurisdiction to enter a judgment. Our ruling, however, is without prejudice to defendants' right to seek attorney's fees should they prevail on remand.

The trial court's grant of summary judgment in favor of defendants on plaintiffs' action for declaratory judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion. The denial of defendants' claim for attorney's fees is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.