**In re Bradley A. DANISE, d/b/a Brad Danise & Sons Siding, Debtor.**

**Bankruptcy No. 5–88–00323.**

United States Bankruptcy Court, D. Connecticut.

April 18, 1990.

Ira B. Charmoy, Bridgeport, Conn., for debtor.

Maria L. Hampton, Green & Kleinman, P.C., Hartford, Conn., for Federal Nat. Mortg. Assn.

## MEMORANDUM AND ORDER ON APPLICATION FOR § 506(b) FEES AND EXPENSES

ALAN H.W. SHIFF, Bankruptcy Judge.

Federal National Mortgage Association ("FNMA") has filed an application under Bankruptcy Code § 506(b) for the allowance of $5,523.56 for fees and expenses. The debtor objects.

### BACKGROUND

On August 11, 1987, FNMA commenced an action against the debtor to foreclose its $65,450.00 mortgage on the debtor's residence. A judgment of foreclosure by sale entered on November 9, 1987, which set a sale date of April 16, 1988 and provided for the appointment of Attorney Deborah L. Grover as the committee of sale (the "Com-

mittee").[1] On April 15, 1988, the debtor filed a petition under chapter 13, and the sale was cancelled. On May 25, 1988, the Committee filed a "Motion for Order Re: Costs of Suit" in the state court. On January 9 and February 27, 1989, that court ordered FNMA to pay the Committee expenses of $1,692.23 and fees of $2,170.83, respectively.

On March 20, 1989, the debtor filed a motion in this court to sell his residence free and clear of interests. See 11 U.S.C. § 363(b), (f). The motion was granted on March 30, 1989; the property was sold for $144,974.39; and on April 28, the debtor moved for the distribution of the sale proceeds. The motion was granted in part on May 15, but the trustee was ordered to retain $5,555.29 pending a determination of FNMA's entitlement to attorneys' fees and costs.

On May 23, 1989, the debtor filed a Motion to Show Cause why the Committee should not be required to disgorge the amounts paid to her by FNMA, contending that the Committee's state court motion for fees and costs violated the automatic stay. On July 11, 1989, FNMA filed a memorandum in support of the debtor's motion. In denying the debtor's motion on July 12, 1989, I concluded that FNMA was not protected by the stay.[2]

On July 20, 1989, FNMA filed a Motion for Distribution, seeking payment of $1,660.50 for the post-petition fees of its attorneys and $3,683.06 it had paid to the Committee. The motion did not comply with Bankruptcy Rule 2016 and Local Bankruptcy Rule 25. See infra at 495. FNMA subsequently filed the instant application.

---

1. Connecticut General Statutes § 49-24 provides:

 All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending.

In a foreclosure by sale, the court is the vendor and the committee the agent of the court. New England Bank & Trust Co. v. Loubier (Matter of Loubier), 6 B.R. 298, 302 (Bankr.D.Conn.1980);

## DISCUSSION

■ Code § 506(b) provides in part:

 To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The burden of proving entitlement to fees and expenses is on the applicant, and "[s]ince every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or for use by the debtor, this burden is not to be lightly regarded." In re Gillette Assoc., Ltd., 101 B.R. 866, 879 (Bankr.N.D.Ohio 1989).

■ Federal law governs the determination of reasonableness under Code § 506(b). Chase Manhattan Bank, N.A. v. Wonder Corp. of America (In re Wonder Corp. of America), 82 B.R. 186, 189–90 (D.Conn. 1988).

 [A]fter bankruptcy a creditor's rights are more restricted because of the codified public policy of giving a debtor an opportunity to attempt to reorganize. Thus, a prepetition contract may not authorize or justify legal services that are incompatible with existing bankruptcy law and policy, and rights and remedies which were appropriate under a loan agreement construed under state law before bankruptcy ... may be limited or prohibited thereafter.

In re Wonder Corp. of America, 72 B.R. 580, 588 (Bankr.D.Conn.1987), aff'd, 82 B.R. 186 (D.Conn.1988). Thus, "where services are not reasonably necessary or where action is taken because of an attor-

---

Hartford Fed. Sav. and Loan Ass'n v. Tucker, 13 Conn.App. 239, 536 A.2d 962, 965 (1988). The proceeds of the sale are distributed in accordance with a supplementary judgment. Conn. Gen.Stat.Ann. § 49-27 (West Supp.1989).

2. For an analysis of that holding, see In re Rubenstein, 105 B.R. 198 (Bankr.D.Conn.1989). In that case, I concluded that because a judgment against the plaintiff bank would not bind the debtor, the plaintiff bank was not protected by the automatic stay.

ney's excessive caution or overzealous advocacy, courts have the right and the duty, in the exercise of their discretion, to disallow fees and cost under § 506(b)." *Id.* at 591.

■ Applications under § 506(b) must comply with Bankruptcy Rule 2016(a), which provides in part:

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Applications under § 506(b) must also comply with Local Bankruptcy Rule 25(a), which provides in part:

Unless otherwise ordered by the Court, all applications for compensation to attorneys ... for services rendered or reimbursement of necessary expenses shall, in addition to the requirements set forth in the Bankruptcy Code and Bankruptcy Rule 2016(a), contain the following information:

. . . .

(2) In concise form, a general narrative statement of the nature of the services provided, including the results obtained, the size of the estate, total amount of compensation sought and any other matters which will assist the Court in determining the reasonable value of such services;

(3) A timesheet setting forth in typed format, based upon records prepared contemporaneously with the services rendered;

. . . .

b. a description of services in sufficient detail to enable the Court to find that such services were actual and necessary;

c. the time spent rendering each service broken down into tenths of an hour. . . .

A fee application which groups together several distinct tasks into a single billing or

does not adequately describe the nature of an entry does not comply with Rule 2016(a) and Local Rule 25(a). *In re RBS Indus., Inc.,* 104 B.R. 579, 581 (Bankr.D.Conn. 1989).

## Attorneys' Fees

■ FNMA seeks the allowance of $1,660.50 for fees representing 12.3 postpetition hours expended by its attorneys. Of those hours, 7.3 relate to FNMA's support of the debtor's May 23 Motion to Show Cause, but the money FNMA paid the Committee was not for a claim against the debtor. *See In re Rubenstein,* 105 B.R. 198, 202–03 (Bankr.D.Conn.1989). In essence, then, by supporting the debtor's motion FNMA was pursuing a claim against the Committee. Even assuming such indirect costs of collection were reasonable under § 506(b), fees under that section must be authorized by the loan agreement, *see In re Wonder Corp. of America, supra,* 72 B.R. at 588, and it is unlikely that the FNMA mortgage went so far as to allow it to recover fees incurred pursuing a claim against a third party. *See In re Wonder Corp. of America,* 96 B.R. 423, 426–27 (Bankr.D.Conn.1989). In any event, FNMA did not produce the mortgage, so that I am unable to determine whether it did. The 7.3 hours are therefore not allowed.

Of the remaining 5.0 hours, .6 hours were spent on the defective July 20 motion for distribution and 4.4 hours are an estimate of future legal services. FNMA may not be compensated for preparing and filing the defective motion or for anticipated future hours.

## Costs

FNMA seeks reimbursement for the cost of the $2,170.83 committee fee, representing 17.17 hours at the rate of $125.00 per hour, and the $1,692.23 committee expenses.[3]

### A. Committee fee

*Sign related expense*

■ The Committee's fee includes $350.00 for 2.8 hours related to a sign

---

**3.** The application lists 17.17 hours for the Committee, which at the Committee's rate of $125.00

per hour totals $2,146.25. The application is treated as though it were for that amount.

advertising the sale, of which an entry totalling 1.25 hours for March 15, 1988 states: "Sign on Prop? 3:30–4:45." The Committee testified that the sign maker would not install the sign without her presence, and that on March 15 she had to speak with the debtor before he would allow the sign. I therefore find that the March 15 entry was reasonable, but none of the other six sign related entries are allowed as they are not explained and/or are grouped with other services.

### Telephone calls and Miscellaneous unexplained items

■ Unexplained telephone calls are disallowed. For example, the entry for February 19, 1988 provides: "PC to Atty. R." Other unexplained items are also disallowed. For example, the entry for March 21, 1988, simply provides "Ct". There are twenty-six such entries totalling 3.66 hours for the period from February 8, 1988 to April 22, 1988.

### Notification of cancelled sale

On April 16, 1988, the committee waited at the property for 3.0 hours to tell potential buyers that the sale was cancelled due to the commencement of this bankruptcy case. That time is not allowed. The committee could have posted a note that the sale was cancelled on the sign advertising the sale. That activity would have taken minutes, not hours.

■ The Committee, who is an attorney, charged $125.00 per hour for her services, presumably the rate she bills clients for services as an attorney. The services performed by a committee of sale are, however, generally ministerial, they do not require the training and expertise of an attorney, and their rates should reflect that difference. In this case, the majority of the Committee's allowed time was for paralegal or non-legal services. For example, the entries for April 2 and April 15, 1988 provide: "Examine ad for accuracy." The estate should not be required to pay attorney rates for what amounts to proofreading. Fees are allowed at the rates of $125.00 per hour for legal services, $75.00 for paralegal services, and $50.00 for non-legal services.

Of the 17.17 hours listed in the Committee's timesheet, 8.21 are not allowed. The remaining 8.96 hours, which include a motion for advice in the state court; showing the property; answering inquiries about the property; and arranging insurance, are allowed at a blended hourly rate of $94.36 (4.04 legal hours; 3.78 paralegal hours; 1.14 non-legal hours) [4] for a total of $845.47.

### B. Committee Expense

■ Connecticut General Statutes § 49–25 provides that when a foreclosure by sale is ordered, "the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of the court." The Committee expense includes $402.10 for two appraisals

---

**4.** The 8.96 hours are allowed as follows

Legal:

| Date | Description | | Time |
|------|-------------|---|------|
| 3/4 | legal research | — | .16 |
| 3/6 | legal research | — | .25 |
| 3/7 | legal research | — | .50 |
| 3/9 | legal research | — | .25 |
| 3/17 | motion for advice | — | .31 |
| 4/15 | phone calls to Bankruptcy Court | — | .41 |
| 5/2 | legal research | — | .08 |
| 5/20 | committee report | — | 2.00 |
| 5/24 | phone call to FNMA | — | .08 |
| | | | 4.04 |

Paralegal:

| Date | Description | | Time |
|------|-------------|---|------|
| 3/15 | put up sign | — | 1.25 |
| 3/29 | phone calls to appraisers | — | .16 |
| 4/5 | arrange insurance | — | .16 |
| 4/13 | arrange insurance and taxes | — | .21 |
| 4/14 | show property | — | 2.00 |
| | | | 3.78 |

Non-legal:

| Date | Description | | Time |
|------|-------------|---|------|
| 4/2 | examine ad | — | .16 |
| 4/5 | 3 inquiries | — | .24 |
| 4/8 | inquiry | — | .16 |
| 4/12 | inquiry | — | .26 |
| 4/13 | inquiry | — | .08 |
| 4/15 | examine ad; phone call to police | — | .24 |
| | | | 1.14 |

by attorneys Sharon Dornfield and John Jowdy. The third appraisal was performed by Frank Jacobs, a real estate appraiser. The debtor objects to allowance of the Dornfield and Jowdy appraisals, contending that "unless a showing can be made that ... [Dornfield and Jowdy] are appraisers and have expertise to make an appraisal, [the appraisals] appear to be superfluous and a needless expense to the estate."

Dornfield and Jowdy filed sworn statements of their appraisals, but no evidence was offered from which their appraisal fees could be evaluated. The Committee testified that she did not know whether Dornfield and Jowdy perform appraisals on a regular basis, how they arrived at the appraised values, whether either of them went inside the property, and whether Jowdy in fact visited the property. She testified that she believed neither attorney was allowed inside the house. The Committee also testified that the state court did not specifically address the reasonableness of the appraisal costs.

There has been no showing that Dornfield and Jowdy have any real estate appraisal expertise, that their appraisals were even minimally thorough, or that their appraisals would have served any useful purpose. *See In re Rubenstein, supra,* 105 B.R. at 201 n. 3. I therefore conclude that they have not been shown to be reasonable expenses under § 506(b). The remainder of the Committee's expenses are allowed.

## CONCLUSION

For the foregoing reasons, the debtor's objection is sustained; FNMA's § 506(b) application is allowed in the amount of $2,135.60, consisting of costs attributable to the Committee's fees and expenses of $845.47 and $1,290.13, respectively; and IT IS SO ORDERED.