**In re The GREENWICH SHOWBOAT LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 5–89–00853.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 10, 1990.

Maximino Medina, Jr., Zeldes, Needle & Cooper, P.C., Bridgeport, Conn., for debtor.

Robert M. Dombroff, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for The Connecticut Bank and Trust Co., N.A.

## MEMORANDUM AND ORDER ON MOTION TO DISBURSE PROCEEDS

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

On September 28, 1984, Indian Harbor Properties, Inc. ("IHP"), a Connecticut cor-

poration owned by Showboat Inn, Inc. ("Showboat"), gave Connecticut Bank and Trust Company, N.A. ("CBT") a $5,000,-000.00 note and a $300,000.00 note which were secured by mortgages of the same date on certain real property owned by IHP and located in Greenwich, Connecticut (the "Inn"). On May 23, 1986, CBT, IHP, and Showboat entered into a Modification Agreement pursuant to which the foregoing notes were consolidated into one $5,300,000.00 note, IHP gave CBT a new note for $600,000.00, and the $5,000,000.00 mortgage was modified to secure the two May 23 notes, interest on those notes, and any costs, fees, and expenses incurred by CBT (the mortgage as modified is hereinafter referred to as the "Mortgage"). The Modification Agreement also provides for a 5% late charge on any late future note payments. The mortgages and the Modification Agreement were recorded in the Greenwich land records. On December 30, 1986, Showboat, IHP, CBT, and Joseph, Isabelle, and Kathy Keating entered into an Assumption Agreement pursuant to which IHP was dissolved, Showboat absolutely and unconditionally assumed all IHP obligations to CBT, and all of IHP's assets were transferred to Showboat.

In March, 1988, following Showboat's default on the notes, CBT made formal written demand for payment. Pursuant to a July 1, 1988 Forbearance Agreement, CBT agreed to forbear from commencing a foreclosure action until February 1, 1989. Showboat agreed, *inter alia*, that it would make specified monthly payments and that, as those payments would be insufficient to pay the interest on the notes, interest would accrue on unpaid interest. CBT and Showboat also settled a dispute over the proper interpretation of the Modification Agreement late charge provision, agreeing that a late charge of at least $100,000.00 was due. On December 29, 1988, Showboat transferred the Inn to the debtor by quit claim deed.

On July 14, 1989, the debtor filed a petition under chapter 11 of the Bankruptcy Code. At a court ordered public auction held on November 29, 1989, Lexington Development submitted a high bid of $9,000,-000.00 for the Inn. The debtor objected to the sale at that price, arguing that the Inn was worth approximately $17,000,000.00. In preparation for the scheduled hearing on that objection, CBT retained appraisers and incurred expenses of $7,075.20. The debtor subsequently withdrew its objection and the Lexington Development bid was approved on January 26, 1990. CBT was paid its undisputed principal and interest of $6,337,939.11 pursuant to a February 7 court order.

On February 15, CBT filed the instant motion to disburse proceeds, seeking to be paid interest on interest in the amount of $125,854.00 and late charges in the amount of $100,000.00 as provided for in the Forbearance Agreement. In addition CBT claims $41.95 as interest per day on those amounts for each day after February 8 that it is not paid, and $7,075.20 for fees and expenses. The debtor attacks the validity of each element of CBT's motion. It appears to be undisputed that unsecured creditors will receive no dividend in this case.

## II.

### A. *Debtor's Liability Under Forbearance Agreement*

As a preliminary argument, the debtor contends that it was not a party to the Forbearance Agreement and therefore cannot be held liable for claims arising under that agreement. Even assuming that the debtor did not expressly take the Inn subject to the Forbearance Agreement,[1] I conclude that the debtor is liable. The debtor admits that it took the Inn subject to the $5,900,000.00 debt and mortgage securing that debt. *Debtor's Memorandum* at 5. The Forbearance Agreement modified the rights of CBT and

---

1. CBT argues that the debtor did expressly take the Inn subject to the Forbearance Agreement. *CBT Memorandum of Law* at 10. However, the debtor does not admit that in the papers before me and there is no evidence before me that the debtor did expressly take subject to the Forbearance Agreement.

Showboat under the Modification Agreement, the notes, and the Mortgage. When a contract is modified, the contract as modified becomes a new contract between the parties. *E.g., Malkan v. Hemming,* 82 Conn. 293, 296, 73 A. 752 (1909); *Manzin v. United Bank and Trust Co.,* 6 Conn.App. 513, 506 A.2d 169, 171 (1986); *Baena Bros., Inc. v. Welge,* 3 Conn.Cir. 67, 207 A.2d 749, 751 (1964). The debtor is therefore liable for any obligations arising out of the Forbearance Agreement.

## B. *Interest on Unpaid Interest*

Showboat, and therefore the debtor, agreed in ¶ 4 of the Forbearance Agreement to pay CBT interest on unpaid interest during the forbearance period. Paragraph 4 provides in part:

> During the Forbearance Period, Debtor shall make payments to CBT as follows: a) the sum of $11,250 each on July 6, 13, 20, 27, 1988; b) the sum of $22,500 per month commencing on August 15, 1988, and monthly thereafter.... To the extent that interest accrues on the Indebtedness but is unpaid (it being understood that the $22,500 per month during the Forbearance Period will not be sufficient to pay interest accruing on the Indebtedness), interest shall accrue on such unpaid interest at the same rate as it is accruing on the balance of the Indebtedness.

The debtor contends that any interest on unpaid interest which accrued under this provision is unsecured. CBT advances two arguments in support of its position that the interest on unpaid interest is a secured claim.

First, CBT contends that the Mortgage expressly secures that obligation. If the Mortgage were taken in isolation, CBT's argument might have some merit. The flaw in that position is that the agreement between the parties is the integration of the notes, the Mortgage, the Modification Agreement, and the Forbearance Agreement. *See Schubert v. Ivey,* 158 Conn. 583, 587, 264 A.2d 562 (1969) ("In considering the expressed intent of a contract evidenced ... by multiple writings, all of the writings should be considered...."); *Taft Realty Corp. v. Yorkhaven Enter., Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959) ("Parties to an existing contract may, by a subsequent contract, alter any term of their original one.").

Contracts are to be construed in a way that effectuates the intent of the parties. *Sturman v. Socha,* 191 Conn. 1, 10, 463 A.2d 527 (Conn.1983); *Ginsberg v. Mascia,* 149 Conn. 502, 505–06, 182 A.2d 4 (1962). Where the parties' agreement is in writing, their intention is to be determined from the language of that writing rather than on the basis of any intention one of the parties may have silently entertained. *Sturman, supra,* 191 Conn. at 10, 463 A.2d 527; *Robert Lawrence Assoc., Inc. v. Del Vecchio,* 178 Conn. 1, 14, 420 A.2d 1142 (1979). Particular language in a contract prevails over general language, *Miller Bros. Constr. Co. v. Maryland Cas. Co.,* 113 Conn. 504, 514, 155 A. 709 (1931), and courts are not permitted "to make a new contract for the parties or to insert protective conditions which the parties failed to provide for themselves." *Parks v. Baldwin Piano and Organ Co.,* 262 F.Supp. 515, 519 (D.Conn.1967). *See also Farmers and Mech. Sav. Bank v. First Fed. Sav. and Loan Assoc. of Meriden,* 167 Conn. 294, 302, 355 A.2d 260 (1974) ("It is not within the power of the court to make a new or different contract.").

When taken together the plain language of governing documents defeats CBT's argument. The starting point in analyzing the reach of CBT's security interest under the governing instruments is the Mortgage. That Mortgage states that CBT was "desirous of securing the prompt payment of the Note together with interest thereon and any additional indebtedness accruing to it on account of any future payments, advances or expenditures made by it pursuant to the terms hereof...." *Debtor's Post–Argument Memorandum* Exhibit C, at 3. Paragraph 18 of the mortgage provides that "a security interest shall attach ... for the benefit of [CBT] to secure the payment of the Liabilities and all other sums and charges which may be-

come due hereunder." *Id.* at 14. CBT relies primarily on these provisions and argues that interest is expressly provided for by the Mortgage.[2] However, the Mortgage only refers to interest on the note, not interest on that interest.

An analysis of the Modification Agreement does not advance CBT's position. Paragraph 6(c) of the Modification Agreement provides that the Mortgage was amended to provide that "[a]t no time shall the amount of the debt secured by this Mortgage exceed the principal amount of Five Million Nine Hundred Thousand Dollars ($5,900,000.00) together with interest thereon and any costs, fees and expenses incurred by the Grantee hereunder." *Debtor's Post–Argument Memorandum* Exhibit D, ¶ 6(c), at 6. Thus, the Modification Agreement expressly limited the Mortgage to interest on the note, and there was no provision for interest on that interest.

Interest on interest was a new obligation created by the Forbearance Agreement. There is no provision in the Forbearance Agreement for securing the interest on interest or modifying the Mortgage to increase the amount of the debt secured. That agreement provides that it "reflects the full understanding of the parties hereto with respect to the matters contained herein, and there are no representations upon which reliance is had except as set forth herein." *Debtor's Memorandum* Exhibit A, ¶ 7, at 3. Thus, I conclude that under the instruments governing the relations between CBT and the debtor and its predecessors, there is no provision for a security interest for the interest on interest.

CBT's second argument is that its claim for interest on interest is deemed to be secured under Connecticut General statutes §§ 37–1a and 49–2(e). Section 37–1a provides:

> On any loan in excess of ten thousand dollars made to any person, corporation, partnership or association engaged in commercial, manufacturing, industrial or nonconsumer pursuits the loan agreement may provide for the interest to be either paid currently or to accrue, and, if such interest is to accrue, such accrued interest may be added to the principal of the debt on which interest may be charged and collected.

Section 49–2(e) provides:

> Any mortgagee of real property located in this state may contract with the mortgagor in connection with the mortgage loan for interest to be paid currently or to accrue, and, if such interest is to accrue, for such accrued interest to be added to the principal mortgage debt on which interest may be charged and collected. Such accrued interest which is added to the principal mortgage debt shall be secured by the mortgage to the same extent as the original principal of such mortgage debt.

■ The plain language of a statute is ordinarily conclusive as to its meaning. *E.g., United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982). Section 37–1a provides that accrued interest *may* be added to principal. Section 49–2(e) provides that a mortgagor and a mortgagee *may* contract to add accrued interest to the principal, and that *if* accrued interest is added to the principal it is secured to the same extent as the principal of the mortgage debt. The Forbearance Agreement contains no provision for adding the accrued interest to the principal, and CBT cites no provision from any of the other controlling instruments which could be construed to add accrued interest to the principal. Further, § 49–2(e) expressly secures only the accrued interest, not the interest on that interest. I therefore find that CBT's claim for interest on interest is not deemed secured under the Connecticut statutes.

---

2. CBT also cites *Dart & Bogue Co., Inc. v. Slosberg,* 202 Conn. 566, 522 A.2d 763 (1987), and this court's decision in *Pinkus v. Union Trust Co. (In re Schreier),* 111 B.R. 25 (Bankr.D.Conn. 1990), in support of the argument that a mortgage need not expressly refer to each obligation that it is intended to secure. Those decisions relate to the validity of a mortgage against a third-party creditor, and specifically to the adequacy of notice provided by a mortgage. There was no issue in those cases as to what obligations the mortgagor and mortgagee intended to secure, and they are not relevant to this controversy.

## C. *Late Charges*

▋ Paragraph 6(d) of the Modification Agreement provides that the Mortgage was modified by adding a provision that "[a]ny payment required under the Note which is received more than ten days after the date on which it is due shall be subject to an additional charge of five percent (5%) of the amount of such past due payment." *Debtor's Post–Argument Memorandum* Exhibit D, ¶ 6(d), at 6. During the negotiations which led to the Forbearance Agreement, CBT claimed that the 5% late charge should be applied to the entire accelerated balance of the debt. Showboat countered that the late charge should be applied only to the individual installments which had not been paid. Under CBT's interpretation, the late charge would have totalled approximately $300,000.00; Showboat's calculation would have totalled approximately $80,000.00. CBT and Showboat compromised that claim in paragraph 5 of the Forbearance Agreement as follows:

> The documents evidencing the Indebtedness provide for a 5% late charge with respect to payments that are not made when due. CBT has advised Debtor that CBT believes that such late charge should be applied to the entire accelerated balance of the Indebtedness; Debtor has advised CBT that Debtor believes that such late charge should be applied only to the individual installments or parts thereof that have not been paid when due. In connection with this forbearance and in settlement of the issue of the interpretation of the late charge provision, CBT and Debtor have agreed that Debtor will pay a late charge equal to the greater of (i) the Sum of Monthly Late Charges, or (ii) $100,000. As used herein, the "Sum of Monthly Late Charges" means 5% of the monthly installments due in February, March, April and May, 1988, plus 5% of the amounts by which the installments that were (prior to the acceleration of the Indebtedness) scheduled for June, 1988 and subsequent months during the Forbearance Period exceed $22,500 per month, or such amount as is actually paid by Debtor, plus 5% of the amount by which payments after the Forbearance Period upon the accelerated indebtedness are less than the scheduled payments that were, prior to the acceleration, required under the financing documents.

The greater amount under paragraph 5 was $100,000.00. The debtor argues that the $100,000.00 late charge is an unenforceable penalty and, assuming arguendo that it is enforceable, that it is unsecured to the extent it "is founded upon the Forbearance Agreement." *Debtor's Post–Argument Memorandum* at 5 n. 1.

The debtor's first argument is unavailing, as it is clear that a late charge such as that provided for in the Modification Agreement is allowable under state law. *See Hamm v. Taylor*, 180 Conn. 491, 493–94, 429 A.2d 946 (1980) (reversing trial court disallowance of 10% late charge). Indeed, the debtor makes no challenge to the validity of the late charge provided for by the Modification Agreement. Thus, absent more, an allowable late charge would have accrued for all months in which the debtor failed to make the required payments. It would be a bizarre result if that allowable late charge were rendered invalid as the result of a compromise as to the amount of the late charge. A penalty/liquidated damages analysis is simply not relevant here.

The debtor's second argument is likewise unavailing. The late charge arose out of the Modification Agreement; the Forbearance Agreement merely provided for the agreed upon amount of the late charge. The debtor appears to concede that the late charge is secured to the extent that it is based upon the Modification Agreement. Paragraph 7 of the Forbearance Agreement provided that "[e]xcept to the extent expressly set forth herein, all of the agreements between CBT and [Showboat] or [Showboat's] predecessor and all of the financing documents delivered to CBT shall remain in full force and effect in accordance with their terms." Thus, any pre-existing security interest CBT had with respect to the late charge was not altered by the Forbearance Agreement.

### D. *Additional Interest*

■ As noted, CBT seeks additional interest of $41.95 per day from February 8, 1990, the date of the sale of the Inn. This calculation is based upon a 6.5% interest rate, apparently applied to the interest on interest claim and the late charge. CBT argues that the debtor's obligation to pay CBT those amounts was indisputable after the sale and that the debtor should not be allowed to receive a windfall by having improperly withheld CBT's money.

Consistent with the conclusion reached in Part II B of this decision, I conclude that CBT is not entitled to additional interest on the interest on interest claim. Further, the entire claim for additional interest is obscure in that CBT cites no provision of any of the relevant instruments or state law which would entitle it to such interest and does not explain how it arrived at a rate of 6.5%. CBT's claim for additional interest is disallowed.

### E. *Incidental Expenses*

CBT seeks reimbursement for incidental expenses in the amount of $7,075.20, consisting of $6,640.00 for two appraisers and $435.20 for a Connecticut sales tax incurred by the Hopgood Group, one of those appraisers. Invoices from the appraisers were attached to the CBT motion. The Hopgood Group invoices state that it incurred twenty-four hours at an hourly rate of $160.00, for a total fee of $5,440.00. The invoice from Edward F. Heberger & Associates, Inc., the other appraiser, is simply a bill for $1,200.00. The debtor argues that the invoices do not contain information which is sufficient to permit a determination of the reasonableness of the requested amount. I agree.

■ Although it has not filed an application and does not cite a statutory reference in its motion, it is apparent that CBT seeks reimbursement under § 506(b), which provides in part:

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such

claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The burden of proving entitlement to fees and expenses under § 506(b) is on the applicant. *In re Danise*, 112 B.R. 492, 494 (Bankr.D.Conn.1990); *In re Gillette Assoc., Ltd.*, 101 B.R. 866, 879 (Bankr.N.D.Ohio 1989). In order to enable the court to make a determination as to reasonableness, a § 506(b) applicant must comply with Rule 2016(a), *In re Danise, supra*, 112 B.R. at 495, which provides in part:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

An application which groups together several distinct tasks or fails to adequately describe the nature of an entry does not comply with Rule 2016(a). *Id.; In re RBS Indus., Inc.*, 104 B.R. 579, 581 (Bankr.D. Conn.1989).

The invoices give virtually no description of the services rendered, so I am unable to determine whether individual services were reasonable. The invoices also give no basis for determining whether the hourly rates were reasonable and do not indicate what the sales tax was for. The application for reimbursement is denied.

### III.

For the foregoing reasons, CBT's motion for distribution of proceeds is GRANTED in part and DENIED in part: CBT's claim for interest on interest is denied, its claim for a late charge is allowed, its claim for additional interest is denied, and its claim for reimbursement of expenses is denied. The debtor shall distribute $100,000.00 to CBT; the partial denial of CBT's motion is without prejudice to renew its requests for reimbursement of expenses and additional interest; and IT IS SO ORDERED.