In re Robert E. KLEIN d/b/a Bob Klein Plumbing & Heating and Robin M. Klein a/k/a Robin M. Carwile, Debtors.

David EISENBERG, Trustee, Plaintiff,

v.

CAPP CONSTRUCTION, INC., Defendant.

Bankruptcy No. 89–21594T.

Adv. No. 90–2437.

United States Bankruptcy Court, E.D. Pennsylvania.

May 8, 1992.

Karl E. Friend, Allentown, Pa., for plaintiff.

William K. Murphy, Herster, Newton & Murphy, Easton, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

Before the court is a complaint filed by the Trustee pursuant to 11 U.S.C. § 524(b) to recover monies allegedly owed to the estate by Capp Construction, Inc. ("Capp"). Our review of the pleadings, testimony, evidentiary exhibits and relevant case law mandates a judgment for the trustee in the amount of $43,273.00. Further, we find that Capp has not sustained its burden of proof as to the items which it has interchangeably and alternatively pleaded as affirmative defenses, setoffs and counterclaims; therefore, all of Capp's claims are dismissed with prejudice. A brief recitation of the relevant facts follows.

John Cappellano, d/b/a Capp Construction, Inc., had an ongoing fifteen year professional relationship with the Debtor, whereby Debtor was employed as a plumbing and heating subcontractor. Cappellano also is a principal owner of the Lafayette Inn ("Inn"), Easton, PA. We find, as a matter of law, that although aware of Cappellano's ownership interest in the Inn, in all transactions at issue, the Debtor dealt with Cappellano d/b/a Capp.

The Debtor, from approximately January 11, 1988 through November 28, 1988, had undertaken subcontracting work, on Capp's behalf, at the Sussex Wire Randolph Corp.

("Sussex"), the Helen Beebe Speech and Hearing Center, ("Beebe") and the Inn, all located in Easton, PA, pursuant to a series of written and oral contracts.

The Sussex operation was undertaken pursuant to three written, executed contracts; same were executed on June 22, 1988, June 20, 1988 and June 20, 1988 for an aggregate price of $71,480.00. (Plaintiff–Sussex Exhibits 1, 2, 3).

The Beebe operation was undertaken pursuant to a single unexecuted estimate/contract provided to Capp, in early to mid October, four to five weeks before on site work was initiated. Despite nonexecution, Capp impliedly agreed to the estimate as they permitted the debtor, sans objection, to proceed with the project. The estimate was for $7,975.00. (Plaintiff–Beebe Exhibit 1). *See, Deemer Steel Casting Co., Inc. v. Lebanon Foundry and Machine Co.*, 117 B.R. 103 (Bankr.D.Del.1990).

The Inn operation was undertaken pursuant to oral communication between the Debtor and Capp. From January 11, 1988 through August 1, 1988, without a written contract, and sans objection, the Debtor serviced the Inn's air conditioning units. Logically, had Capp objected to the Debtor's actions, such service would not have continued over an eight month period. (Plaintiff–Lafayette Exhibits 1 through 42, inclusive.)

Plaintiff–Trustee alleges that service rendered at the Inn totals some $8,963.10, same amount then due to Debtor. Our review of plaintiff's exhibits revealed simple addition errors, gross errors as to the compilation and billing of hourly labor rates and multiple billings for single service calls. We, therefore, recalculated plaintiff's claims as they related to Inn. Our total for Exhibits 1 through 42, inclusive, is $8,963.85. This figure includes $4,359.85 of errant billings as outlined, *supra;* therefore, plaintiff's Inn claim is allowed to the extent of $4,604.00.

■ In addition to the amounts, *supra,* Trustee also seeks to recover for work undertaken at Sussex, allegedly on Capp's behalf. The "Sussex contracts," collectively Plaintiff–Sussex Exhibits 1, 2, 3, at Paragraph eight provide in part:

"This agreement sets forth the entire transaction between the parties ... All changes in this agreement shall be made by a separate document and *executed* with the same formalities. No agent of the [debtor], unless authorized in writing ... has any authority to ... alter or enlarge this contract ..."

The invoices, dated August 15, 1988 and August 21, 1988, represent work allegedly undertaken by Debtor, at Sussex, on Capp's behalf. Invoices alone, given the existing Debtor–Capp Sussex contracts, do not rise to the level of contractual obligations which would bind Capp. *See, In re Greenwich Showboat, Ltd. Partnership,* 117 B.R. 54 (Bankr.D.Conn.1990). The excerpt, *supra,* provides specific formalities which must occur before new or enlarged contractual relationships and responsibilities exist; none have occurred.

■ Trustee's invoice submissions representing work undertaken at Sussex from November 1, 1988 through November 20, 1988, by B & D Plumbing & Heating, Inc. given the Debtor–Capp Sussex contracts, likewise do not contractually obligate Capp to the Trustee's claims. Further, the record is devoid of evidence which shows that Capp granted Debtor the authority to enter into contracts on Capp's behalf; to that end, the contractual relationship, if any, runs from Debtor to B & D, not from Capp to B & D.

We find, therefore, that: *(1)* three valid contracts existed between Debtor and Capp, as to Sussex, for $71,480.00; *(2)* a valid oral contract existed between Debtor and Capp, as to Beebe, for $7,975.00; and *(3)* a valid oral contract existed between Debtor and Capp, as to Inn, for $4,604.00; the total then due to Debtor, subject to payment received, as discussed *infra,* is $84,059.00. Further, the Sussex invoice submissions do not, absent more, give rise to a contractual debt; therefore, Trustee may not prevail against Capp as to these amounts.

■ Capp, in a termination of employment letter to Debtor, dated November 28,

1988, indicated termination stemmed from "nonperformance and breach of contract." The record, save a one-day deer hunting excursion, is devoid of any specific examples or actions, by Debtor, which indicate a material breach of contract. Capp's overlapping employment of Debtor, initially at Inn, then at Sussex, and finally at Beebe, indicates that, contrary to the nonperformance and breach allegation, Debtor had performed for Sussex in conformity with customary industry practices. We apply the same standard to Debtor's performance at Beebe and Inn. Absent specific examples of a breach or nonperformance, we find Capp's unilateral termination of Debtor's subcontracts without basis; therefore, Capp remains indebted to Debtor for the contractual amounts as outlined, *supra*.

Finally, our review of evidentiary submissions reveals that Capp tendered payments of $2,000.00, $18,000.00 and $20,786.00 on June 24, 1988, July 27, 1988 and November 8, 1988, respectively; aggregate payments, then, total $40,786.00. As Debtor has received such amount, he is due an additional $43,273.00 from Capp.

In light of the considerations, *supra*, I shall enter the following order.

## ORDER

AND NOW, this 8th day of May, 1992, it is ORDERED that a judgment of $43,273.00 be entered on the Plaintiff–Trustee's Complaint. Further, all claims of Capp Construction, Inc., as to the Debtor, are DISMISSED WITH PREJUDICE as same are without merit.